### In re HOLLAND'S ESTATE.

No. S–3815.

District Court of Alaska.   Third Division.   Anchorage.

July 23, 1945.

558

Talmadge L. Smith, of Kodiak, for appellant.

Lawrence Seltzer, of Kodiak, for administrator.

DIMOND, District Judge.

This is an appeal from an order of the Commissioner and Probate Judge for the Kodiak Precinct, Third Division, Territory of Alaska, denying the petition of John Springhill for proof and probate of a written instrument claimed to be the last will and testament of James S. Holland, deceased, and for appointment of the petitioner as administrator of the estate.

Motion was made by the present administrator, through his attorney, to dismiss the appeal upon the ground that the same had not been taken within the time required by law. Singularly enough the written notice of appeal is dated and was served upon the attorney for the administrator on the 27th day of January, 1945, but the written order denying probate of the will is dated January 29, 1945. None of the papers in the file bears any copy of filing stamp or other indication as to the several dates on which they were actually filed in the Probate Court. It appears probable that the appeal was taken from an oral order of the Probate Judge made on or before January 27, 1945, and that the order was reduced to writing on January 29, 1945. In any event the appeal was seasonably taken, and therefore the motion to dismiss the appeal was and is denied.

Trial of the cause on the appeal was held at Kodiak, Alaska, on June 26, 1945, and at the conclusion of the trial the Court reserved decision to enable counsel to submit briefs within twenty days from the date thereof. Brief has accordingly been submitted by Talmadge L. Smith, attorney for the appellant, but no brief has been submitted on behalf of the respondent, the present administrator of the estate.

It appears from the record that the decedent, James S. Holland, died by suicide on March 1, 1943. Shortly thereafter the questioned instrument, later offered for probate as the last will and testament of the decedent, was given to Paul C. Herring, deputy U. S. marshal at Kodiak, and by him promptly delivered to the U. S. Commissioner and Probate Judge for the Kodiak Precinct. So far as the record shows, no official action was taken by the Probate Judge at that time with respect to the validity of the instrument as a will, but thereafter, and on April 7, 1943, the Probate Judge, without reference to the instrument in any manner, upon the application of Jack Allman dated March 24, 1943, appointed him administrator of the estate. Mr. Allman qualified as administrator and has since continued to act in that capacity. So far as shown by the record he is not a creditor of the estate and has no interest in it except as administrator.

On January 22, 1945, the said John Springhill filed in the Probate Court his petition for admission of the will to probate and for his appointment as administrator, supported by the affidavits of Lucian P. Haworth, Morris Olson, Jack Delane, George Blinn, Paul C. Herring, Merrill C. Coon and Talmadge L. Smith. The petition was and is opposed by Allman as administrator. So far as indicated by the record no formal hearing was ever had in the Probate Court on that petition, nor was any oral testimony taken. Nevertheless, on January 29, 1945, the Probate Judge entered a written order in the proceeding denying the petition. That order, excepting the formal parts, is as follows:

"The above-entitled case coming regularly on for hearing on the petition of John Springhill for the issuance to him of Letters Testamentary, and the affidavits attached thereto, and the affidavit of Mary Gregoroff in opposition thereto, and it appearing to the Court that the writing which petitioner seeks to have admitted as a will was filed in the probate court records as of some twenty months prior to the date hereof, and was presented for probate as of said time and probate refused, and it further appearing that said writing or scrawl was issued while the writer, the deceased was incompetent to execute any legal document or will, and had not sufficient mind or memory to dispose of his property, and thereafter within three minutes committed suicide, and had been under the influence of intoxicating liquors on the day thereof, and that said instrument indicates great emotional stress of the maker, and is not sufficient in form to constitute an holographic will, and that petitioner is estopped to claim said instrument is a will because of lapse of time and failure to appeal from prior denial of probate, and that there is and existing administration with Jack S. Allman as administrator, and that said estate has been in process of administration for more than twenty months, now therefore it is by the Court:

"Ordered that the petition of John S. Springhill for the issuance to him of Letters Testamentary be, and the same, hereby is denied."

From the evidence it appears that the decedent was at times addicted to the excessive use of intoxicating liquor and also that his wife had divorced him. To the latter circumstance is attributed, at least in part, the depression which led to his suicide. The testimony shows that on the day of his death he returned to his dwelling in the house of the said John Springhill, and proceeded upstairs to the room which he occupied where other persons were present. He then wrote in a book a portion or all of the writing which is here submitted as his last will and testament. He also sent for Springhill who, after some delay, went up-

stairs and talked with the decedent. Springhill tells us of the event as follows:

"I went upstairs and he come alongside me and put his arms around me and told the boys what a wonderful pal I had been to him and that he never had one like me. He still had his arm around me and told the boys, boys if anything ever happened to me that you boys witnesses that John takes care of me, whatever happens, and anything I got goes to my friend, John Springhill, in case of anything happens. He was crying."

The instrument submitted as the last will and testament of the decedent is written in a salesbook and all of the writing of a testamentary nature is embraced on eleven sheets of paper which appear to be sales slips in common use. Each slip is in duplicate, one white and one yellow in color. At the head of each are two blank lines preceded by the words, "Sold by," and "Sold to," and the figures "19—," to indicate the date. The duplicate set of slips bear printed numbers 2474—3 to 2474—8 inclusive, but for convenience in identification at the trial these slips were numbered at the bottom of each from 1 to 12 inclusive. The writing which appears on these slips, beginning with page 2, is as follows:

"Anything to Here is hoping that John Springhill my partner Will not be sorry I left him to (Page 3) take care when I am away Jim. * * * mow shall Sprll have any to be with me but John (page 4) Springhill all my tool or whatever I may owen shall belong to my F John (page 5) Springhill give John (page 6) Jim Holland John Springhill of of my belongings sign. Jas S. Holland 1943. I here do say this day of (page 7) 1943 of Feb. 28 that anything belong to me shall go to John Springhill my (page 8) my partner good luck signed Jas. S. Holl (page 9) siagned Jas. S. Holland Feb. 1945 (page 10) I want everything I own to go John Springhill my friend (page 11) good luck John singned Jas. S. Holland (page 12) anything of mine belong to John Springhill singn Jas. S. Holland."

While some parts of the above writing may be confusing, the intent of the writer is so plain as to be indisputable. First, beginning at the bottom of page 6, we find the following: "I here do say this day of 1943 of Feb. 28 that anything belong to me shall go to John Springhill my my partner  Good luck signed Jas. S. Holl—" (This page is here mutilated by a punch hole placed in it for filing purposes.)  Continuing on page 9, "Siagned Jas. S. Holland Feb. 1945."  Further, on pages 10 and 11 we have the following: "I want everything I own to go John Springhill my friend good luck John singned Jas. S. Holland."

While it may be reasonably assumed from the nature of this instrument that the writer was laboring under serious mental perturbation, and thus we find the repetitory statements, the testimony of all of the witnesses indicated that he was sober and that, so far as the witnesses could determine, he was not insane.  It was shown at the trial that Springhill was the decedent's friend; that Springhill had loaned him money for food and had given him shelter; and that the decedent rightly regarded Springhill as his friend and benefactor.  It seems perfectly natural under the circumstances that the decedent, about to kill himself, would have desired in this fashion to reimburse Springhill for the advances so made.

■■  The order and decision of the Probate Court are entitled to great respect, but nowhere in the order is there the slightest indication that the Probate Judge heard any witnesses with reference to the matter, and therefore, when the Probate Court held that the instrument had been "refused probate" 20 months prior to the date of the order, and "the deceased was incompetent to execute any legal document or will," those parts of the order and the conclusion that followed have no adequate support in the record.  The thoughts of a judge are not judicial decisions.

■■  No evidence, other than the document itself, indicates that the decedent, on the occasion mentioned, was not of sound and disposing mind and memory.  The deter-

mination of a testator to give property to one who has assisted him is not an evidence of insanity but quite the contrary. The Probate Judge did not testify at the trial in this court and therefore it must be assumed that he had no special knowledge of facts which would throw any light upon the testamentary competence of the decedent.

Nor is there any dispute of the fact that the decedent himself wrote all of the testamentary document. His handwriting was identified by Springhill and that testimony is supported by the affidavits of Lucian P. Haworth, Morris Olson, Jack Delane, George Blinn, Paul C. Herring and Merrill C. Coon.

█   The legislature of Alaska has expressly provided for holographic wills: Chapter 4, Session Laws of Alaska 1915; Section 4624, Compiled Laws of Alaska. The validity of holographic wills in the Territory of Alaska has been upheld by the Circuit Court of Appeals for the Ninth Circuit in the case of Lovskog et al. v. American Nat. Red Cross, 9 Cir., 111 F.2d 88, 9 Alaska 670.

██   Upon the whole record, I find that the part of the document submitted which begins at the bottom of page 6 with the words, "I here do say," and continues on to and including page 12, is a valid holographic will of the decedent, all written and signed by the decedent in his own hand, and that at the time of the writing the decedent was of sound and disposing mind and memory. The will should be admitted to probate and the petitioner, John Springhill, upon qualification, should be appointed administrator with the will annexed; the present administration of the estate should be terminated forthwith and to that end the present administrator should file in court a report and account of all of his acts as administrator and of all property of the estate that has come into his possession or control; that upon approval of that report and account by the Probate Court and the payment of all proper and lawful expenses of administration to date, all of the remaining property of the

estate should be delivered into the possession of the new administrator, John Springhill, and the present administration of the estate should be thereupon closed.