Charles L. CORN, Appellant,

v.

GUAM CORAL COMPANY, Inc.,
Appellee.

PANCITERIA FAR EAST, INC.,
Appellant,

v.

GUAM CORAL COMPANY, Inc.,
Appellee.

Nos. 17957, 17962.

United States Court of Appeals
Ninth Circuit.

May 28, 1963.

E. R. Crain, Agana, Guam, Schofield, Hanson, Bridgett, Marcus & Jenkins, and John Judge, San Francisco, Cal., for appellant.

Turner, Barrett & Ferenz, and Walter S. Ferenz, Agana, Guam, and San Francisco, Cal., for appellee.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge.

These two causes originated as actions on accounts stated, brought by appellee Guam Coral Company (Coral Company) against Charles L. Corn (Corn) and Panciteria Far East, Inc. (Panciteria) in the Island Court of Guam. They were consolidated for trial and remain consolidated for consideration on appeal here.

After an adverse decision at trial, Corn and Panciteria gave notice of intention to move in the Island Court of Guam for a new trial on the ground of newly-discovered evidence. The notice was "quashed," whereupon Corn and Panciteria appealed from this order to the appellate division, District Court of Guam. The Island Court's order quashing this notice was affirmed by the appellate division of the District Court, and appellants gave notice of appeal to this court.

We are met at the outset by a challenge to our jurisdiction. Appellee Coral

Company has moved to dismiss this appeal on the ground that this court does not have jurisdiction to entertain appeals from final decisions of the appellate division, District Court of Guam.

The same question has also been raised in another appeal from a final decision of the appellate division, District Court of Guam, and currently under submission to this court. We refer to Blas, as Administratrix of the Estate of Pablo v. Talabera, 9 Cir., 318 F.2d 617. In the latter case the jurisdictional question is also argued, including amicus briefs submitted by the Government of Guam through its Attorney General and by the United States Attorney for the District of Guam.

In discussing and deciding whether we have jurisdiction to entertain this appeal, we will consider the briefs and oral arguments presented in the Blas case, as well as in the Corn and Panciteria cases which are dealt with in this opinion.

Appellants predicate this court's jurisdiction on 28 U.S.C. §§ 1291 and 1294(4). Section 1291 provides:

"The courts of appeals shall have jurisdiction of appeals from *all final decisions of * * * the District Court of Guam, * * * except where a direct review may be had in the Supreme Court.*" (Emphasis added.)

Section 1294 provides:

"Appeals from reviewable decisions of the district and territorial courts shall be taken as follows:

\* \* \* \* \* \*

"(4) From the District Court of Guam, to the Court of Appeals for the Ninth Circuit."

Appellee does not dispute that 28 U.S.C. §§ 1291 and 1294(4) are controlling here. It does not contend that the appellate division's decision is not a final decision. It does not urge that the decision is one of which direct review may

be had in the Supreme Court. But it takes the position that section 1291 must be taken at something less than its face value; that the words, "all final decisions of * * * the District Court of Guam," do not include final decisions of the appellate division.

Two apparently distinct lines of argument are advanced in support of this proposition.[1] One is that Congress has failed to provide specifically and separately for further review of appellate division decisions. The other is that the district court as a court of original jurisdiction and the appellate division are separate entities for purposes of appeal to the court of appeals, and that "the District Court of Guam" means only the district court as a court of original jurisdiction. At the heart of both lines of argument is a disbelief that Congress intended a further review of cases already reviewed by a specially created three-judge appellate division.

Many of appellants' and appellee's points are bound up in the legislative history of the relationship between United States Courts and Guam. To facilitate our discussion we will relate that legislative history, discussing its relevance to this case at appropriate points.

The Organic Act of Guam, 64 Stat. 384, was passed on August 1, 1950. By virtue of section 22(a) of that act, 48 U.S.C. § 1424(a), a court of record, designated the "District Court of Guam," was created. In cases arising under the laws of the United States, the district court was given the jurisdiction of a district court of the United States, as such court is defined in 28 U.S.C. § 451.

In addition to its jurisdiction in cases arising under the laws of the United States, the district court was given "original jurisdiction in all other cases arising in Guam, jurisdiction over which has not been transferred by the legislature to other court or courts established by it, * * *." The district

---

1. The arguments which are before us in opposition to our jurisdiction are not inconsistent with each other. Even though presented by various parties they simply supplement one another. Since none of them undermine appellee's position, as a matter of convenience we attribute them all to appellee here.

624

court was also given such appellate jurisdiction as the Guam legislature might determine.

The Organic Act of Guam as it was originally passed in 1950 provided for appeals from certain final decisions of the District Court of Guam. Section 23 (a) of the act, 64 Stat. 390, authorized appeals to the United States Court of Appeals for the Ninth Circuit from all final decisions of the district court in cases involving the Constitution, laws or treaties of the United States, in all habeas corpus proceedings, and in all other civil cases in which the value in controversy exceeded five thousand dollars.

The First Guam Legislature, meeting in August, 1951, enacted Public Law 17, relating to courts of justice in Guam.[2] One of the effects of Public Law 17 was to give the Island Court, a theretofore existing local court, exclusive original jurisdiction in certain cases. These cases included nonfelony cases arising under the laws of Guam, certain felony cases under the laws of Guam,[3] all domestic relations and probate cases and civil cases in which the amount in controversy did not exceed two thousand dollars. Public Law 17, § 1, as it amended and revised Part I, Title I, Chapter III, § 82 of the Guam Code of Civil Procedure.

Another effect of Public Law 17 was to give the District Court jurisdiction to entertain appeals from the judgments, decrees and orders of the Island Court in both criminal and civil causes.[4] Public Law 17, § 1, as it amended and revised Part I, Title I, Chapter II, § 63 of the Guam Code of Civil Procedure.

One other provision of Public Law 17 which is of significance here, is that "Appeals from the Island Court shall be heard and determined by an appellate division of the District Court, consisting of three judges, of whom two shall constitute a quorum." Public Law, 17, § 1, as it amended and revised Part I, Title I, Chapter II, § 65 of the Guam Code of Civil Procedure. This was the beginning of the three-judge appellate division, whose decision and our jurisdiction to review it are here in dispute.[5]

Next to occur was the repeal of section 23(a) of the original Organic Act of Guam. Section 23(a), which had provided for appeals from certain final decisions of the District Court to the Court of Appeals for the Ninth Circuit was repealed by Public Law 248, § 56(e), 65 Stat. 729, on October 31, 1951.

Simultaneously, section 48 of Public Law 248, 65 Stat. 726, amended 28 U.S.C. § 1291 to provide that "The courts of appeals shall have jurisdiction of appeals from all final decisions * * * of the District Court of Guam, * * *." Since section 23(a) of the Organic Act of Guam, which was repealed, had also provided which court of appeals should entertain appeals from the District Court of Guam, section 50(a), Public Law 248, 65 Stat. 727, also amended 28 U.S.C. § 1294 to provide that appeals from the District Court of Guam should be taken to the Court of Appeals for the Ninth Circuit.

2. Public Law 17 was approved by the Governor on August 9, 1951, and became effective immediately upon its approval.

3. Public Law 17 actually gave the Island Court exclusive original jurisdiction in all felony cases arising under the laws of Guam. The Island Court was given jurisdiction "in all cases of felonies under the laws of Guam, which, if tried in the District Court, would not be fully appealable to the United States Court of Appeals for the Ninth Circuit by the defendant if convicted." Since the Organic Act of Guam as it then existed did not provide for appeals from District Court decisions in cases involving the criminal laws of Guam, the Island Court was effectively given exclusive jurisdiction in all cases involving felonies under the laws of Guam.

4. This was in keeping with section 22(a) of the Organic Act of Guam, 64 Stat. 389–390, which gave the District Court "such appellate jurisdiction as the legislature may determine."

5. Two United States district judges were assigned by the Chief Justice of the United States on October 6, 1952, to sit in the appellate division of the court. See Eiban v. Government of Guam, App.Div., D.C.Guam, 115 F.Supp. 519, 521.

It is at this juncture that appellee makes its first argument. The issue, according to appellee, is whether Congress, when it repealed section 23(a) and amended 28 U.S.C. §§ 1291 and 1294, intended to enlarge the appellate jurisdiction of the Court of Appeals for the Ninth Circuit to include final decisions of the appellate division of the District Court of Guam.

Congress did not so intend, contends appellee. Its purpose in repealing section 23(a) and in amending 28 U.S.C. §§ 1291 and 1294 was to correct a defect which arose out of section 23(a) when administered in conjunction with Guam Public Law 17 of 1951; namely, that the District Court of Guam could decide certain cases from which no appeal was available.[6] By granting a court of appeals review of all final decisions of the District Court of Guam, this defect would be rectified.

Appellee cites a Senate Report in support of its position. Senate Report No. 1020, which accompanied H.B.3899, enacted as Public Law 248, 65 Stat. 710–730, 1951, states that providing an appeal in certain cases where none was formerly available was the reason for repealing section 23(a) of the Organic Act and amending 28 U.S.C. §§ 1291 and 1294.[7] It does not relate an effort to enlarge court of appeals jurisdiction to include final decisions of the appellate division.

It is significant, says appellee, that in the legislative history (meaning Senate Report No. 1020) of Public Law 248, the only reference is to cases arising under the primary jurisdiction of the District Court, with no reference being made to any right of appeal in cases arising through the District Court's appellate jurisdiction.

In framing the issue in terms of whether Congress intended to enlarge our jurisdiction to include cases decided by the appellate division, appellee proceeds on the assumption that prior to the passage of Public Law 248 no appeals lay from appellate decisions of the District Court. If the issue can be validly defined in those terms then some affirmative showing of Congressional intent might be required to sustain our jurisdiction of this appeal.

But there is no reason to believe that we were without jurisdiction of appeals from appellate decisions of the District Court before passage of Public Law 248. Section 22(a) of the Organic Act of Guam, 64 Stat. 389–390, 48 U.S.C. § 1424 (a), provided that the District Court should have such appellate jurisdiction as the Guam Legislature might determine. And section 23(a) of the same act provided for appeals from all final decisions in all cases involving the Constitution, laws and treaties of the United States, in all habeas corpus proceedings, and in all civil cases where the amount in controversy exceeded five thousand dollars. The availability of appeals from District Court decisions was sharply limited, but on the basis of subject matter of the cases, not on whether the District

6. Section 23(a) of the Organic Act permitted an appeal from civil cases heard by the District Court of Guam only when the amount in controversy exceeded five thousand dollars. Guam Public Law 17 gave the Island Court original jurisdiction of civil cases only where the amount in controversy did not exceed two thousand dollars. Thus, civil litigants with cases in the two thousand to five thousand dollar range were compelled to bring their suits in the District Court, with no right of appeal from its decisions.

7. "* * * [T]he District Court of Guam will decide felony cases and some civil cases from which there will be no appeal. The amendment of the committee will correct that situation." S.Rept. No. 1020, 82nd Cong., 1st Sess. (1951), 1951 U.S. Code Cong. & Admin.Serv., pp. 2578, 2592. That the District Court would decide felony cases from which there would be no appeal, was not fully accurate. While section 23(a) did not provide an appeal from decisions in felony cases arising under Guam law, Guam Public Law 17 prevented such cases from being tried in the District Court unless the defendant, if convicted, could appeal to the Ninth Circuit. See note 3, above.

Court had acted as an appellate court or as a court of original jurisdiction.[8]

The issue then, is not whether Congress intended to enlarge our jurisdiction to include appeals from appellate decisions, but whether it intended to curtail it. Counsel have not produced and we have not found any positive indication of such an intent. The only basis for inferring that such an intent existed is the fact that Congress, in providing that the District Court should have such appellate jurisdiction as the Guam Legislature might determine, may not have anticipated the establishment of a three-judge appellate division.[9]

But as appellee has pointed out, Public Law 248 was passed to cure defects created by Guam Public Law 17 of 1951.

Since Congress was acting in response to Public Law 17, we must assume some familiarity with it, including its provision for a three-judge appellate division. And it seems that if Congress was of a mind to divest us of jurisdiction over appellate decisions, it would have used more appropriate language than "all final decisions."

In 1958, section 22(a) of the Organic Act of Guam, 48 U.S.C. § 1424(a) was amended to provide that appeals to the District Court of Guam shall be heard and determined by an appellate division of the court consisting of three judges. Act of June 4, 1958, Public Law 85–444, § 1, 72 Stat. 178.[10]

It might be argued that in establishing the three-judge appellate division of the

8. See Lovskog v. American Nat. Red Cross, 9 Cir., 111 F.2d 88, 9 Alaska 670, which involved an appeal from an appellate decision of a district court for Alaska. The legislature of the Territory of Alaska had enacted a statute permitting appeals to the district courts, for the Territory from all orders, decrees and judgments of the U. S. Commissioner exercising the jurisdiction of a court of probate. 28 U.S.C. § 225(a) Third vested this court with jurisdiction to review by appeal final decisions of the district courts for Alaska. After considering whether it had jurisdiction in the case, the court concluded: "The case is properly before us." 111 F.2d at 90. And see Southerland v. St. Croix Taxicab Association and the Government of the Virgin Islands, 3 Cir., 315 F.2d 364, in which the Third Circuit recently held that a statute giving it jurisdiction to review final decisions of the District Court of the Virgin Islands (28 U.S.C. § 1291) includes jurisdiction to review its appellate decisions.

9. The appellate decisions of the district courts which were held appealable in Lovskog and Southerland, cited in note 8, above, were rendered by individual judges, there being no provision for a multi-judge appellate division.

10. The statutory provision added in 1958 reads:
"Appeals to the District Court of Guam shall be heard and determined by an appellate division of the court consisting of three judges, of whom two shall constitute a quorum. The judge appointed for the court by the President shall be the presid-

ing judge of the appellate division and shall preside therein unless disqualified or otherwise unable to act. The other judges who are to sit in the appellate division at any session shall be designated by the presiding judge from among the judges assigned to the court from time to time pursuant to section 1424b(a) of this title. The concurrence of two judges shall be necessary to any decision by the District Court of Guam on the merits of an appeal but the presiding judge alone may make any appropriate orders with respect to an appeal prior to the hearing and determination thereof on the merits and may dismiss an appeal for want of jurisdiction or failure to take or prosecute it in accordance with the applicable law or rules of procedure."

Section 1424b of Title 48, referred to in the foregoing statute, as amended by the Act of June 4, 1958, Public Law 85–444, § 3, 72 Stat. 179, contains this provision with regard to the assignment of judges to serve temporarily as a judge in the District Court of Guam:

"The Chief Judge of the Ninth Judicial Circuit of the United States may assign a judge of the Island Court of Guam or a judge of the High Court of the Trust Territory of the Pacific Islands or a circuit or district judge of the ninth circuit, or the Chief Justice of the United States may assign any other United States circuit or district judge with the consent of the judge so assigned and of the chief judge of his circuit, to serve temporarily as a judge in the District Court of Guam whenever it is made to appear that such an assignment is necessary for the proper dispatch of the business of the court."

District Court in 1958, Congress intended to establish a distinct appellate body from which recourse should not be had; that since it was created after 28 U.S.C. § 1291 was amended to read "all final decisions of the District Court of Guam," the appellate division's decisions were not intended to be controlled by section 1291.

But, as before noted, the appellate division was originally a creation of Guam Public Law 17 of 1951, in response to which section 1291 was amended. Congress, in enacting Public Law 85–444, 72 Stat. 178–179, 1958, 48 U.S.C. § 1424(a), as amended, was " * * * recognizing and making suitable procedural provisions for the appellate division of the district court as it now exists under the local law." S.Rept.No.1582, 85th Cong., 2nd Sess.1958, 1958 U.S.Code Cong. & Admin.News, p. 2623.

Thus, instead of purporting to create a new appellate body, Congress in 1958 was only formalizing the procedural means by which the District Court should exercise its theretofore existing appellate jurisdiction, jurisdiction which antedated the amendment to 28 U.S.C. § 1291. "Appeals to the District Court of Guam shall be heard and determined by an appellate division of the court consisting of three judges, of whom two shall constitute a quorum. * * *" Public Law 85–444, § 21, 72 Stat. 179, 1958, 48 U.S.C. § 1424(a) as amended.

Another provision of Public Law 85–444 might also suggest that Congress intended appellate division decisions to be final. It is the provision in section 3, 48 U.S.C. § 1424b, quoted in note 10 above, authorizing the temporary assignment of a judge of the Island Court of Guam or a judge of the High Court of the Trust Territory of the Pacific Islands (as well as other United States circuit or district judges) to serve temporarily as a judge in the District Court of Guam. This might, under different circumstances, be considered as an indication of congressional intent to create a specially constituted tribunal whose decisions, because susceptible of being rendered by judges who are not circuit or district judges, should not be subject to review by the court of appeals.

No such intent is expressed in the available legislative history. Rather, Congress appears to have been concerned with logistic considerations. " * * * Inasmuch as these judges [from the Island Court of Guam and the High Court of the Trust Territory of the Pacific Islands] are in the general vicinity of Guam, it seems appropriate and logical that they be assigned to the District Court of Guam for temporary duty when needed rather than selecting persons from the Territory of Hawaii." S. Rept.No.1582, 85th Cong., 2nd Sess.1958, 1958 U.S.Code Cong. & Admin.News, p. 2623, which accompanied H.R.4215, enacted as Public Law 85–444, 72 Stat. 178, 48 U.S.C. § 1424b, as amended.

Moreover, judges temporarily assigned from the Island Court of Guam and the High Court of the Trust Territory of the Pacific Islands are not restricted to participation in appellate division decisions. 48 U.S.C. § 1424b provides that they are to be assigned " * * * whenever it is made to appear that such an assignment is necessary for the proper dispatch of the business of the court." From this, two conclusions follow.

One is that Congress was not thinking in terms of a specially constituted appellate division. It was endeavoring to efficiently and economically provide temporary judges for the entire District Court of Guam. The other is that Congress did not intend to preclude the court of appeals from reviewing appellate division decisions simply because judges who are not circuit or district judges have participated in them. For apparently, under 48 U.S.C. § 1424b, these judges could sit on the District Court of Guam in its capacity as a court of original jurisdiction, and their decisions would unquestionably be subject to review by this court.

▉ Court of appeals jurisdiction over district court decisions must, as appellee points out, be granted by Congress. Lewis v. United Gas Pipeline

Co., 5 Cir., 194 F.2d 1005. This court has been given jurisdiction of the appeal under consideration unless Congress did not mean what it has said in 28 U.S.C. § 1291. A review of the legislative history has proven inconclusive. It does not reveal a conscious congressional purpose to have further review of appellate division decisions. Neither does it indicate a purpose to preclude such further review. In that posture of affairs we must be guided by the plain words of the statute. We conclude that we have jurisdiction to entertain this appeal on the merits.

Judgments on the merits, in favor of appellee Coral Company and against appellants Corn and Panciteria, were entered in the Island Court of Guam on March 14, 1960. Appeals were taken to the appellate division of the district court but both were dismissed on January 16, 1961, on the ground that appellants had failed to file opening briefs as required by Rule 8 of the rules governing appeals to the appellate division.

On February 6, 1961, appellants each filed in the Island Court a "Notice of Intention to Move for a New Trial," on the ground of newly-discovered evidence. Appellee moved to quash and dismiss the notices of intention to move for a new trial, contending that according to the provisions of Rule 60(b) of the Rules of the Island Court of Guam the time during which such a motion could be made had long since passed.

The Island Court granted appellee's motions dismissing appellants' notices of intention to move for a new trial. The Island Court held that:

"* * * the notice of intention to move for a new trial filed herein is not permitted by Rule 60(b) of the Rules of Procedure of the Island Court of Guam or any other provision thereof, * * *."

These orders were affirmed by the appellate division of the District Court of Guam and the parties renew their arguments here.

Rule 60(b), which provides for relief from "final" judgments, orders or proceedings on the ground of newly-discovered evidence, states that a motion for such relief must be made within a reasonable time, and "not more than three months after the judgment, order, or proceeding was entered or taken." [11]

Appellants argue that by its terms Rule 60(b) is applicable only to final judgments and a judgment does not become final until it is finally determined on appeal or until the time for taking an appeal has passed. Since the Island Court's judgment was appealed to the appellate division, and since the appeal was dismissed on January 16, 1961, the argument goes, the three-month period did not begin to run until that time. The notice of intention to move for a new trial filed on February 6, 1961 was within this three-month period.

If this question had arisen under Rule 60(b) of the Federal Rules of Civil Procedure, as applied by the federal courts, the answer would be clear.

The federal rule was promulgated in a statutory context in which all "final" decisions of district courts, with certain exceptions, and some "interlocutory" orders and judgments of district courts, are made subject to review in the courts of appeals. 28 U.S.C. §§ 1291, 1292. Finality for this purpose must necessarily be a characteristic of the district court decision whether or not an appeal is taken, since the test is applied in de-

11. Rule 60(b) of the Rules of the Island Court of Guam which, except for the provision for a three-months maximum time limit rather than one year, is virtually identical with Rule 60(b), Federal Rules of Civil Procedure, reads in pertinent part:

"On motion, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceedings for the following reasons: * * * (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); * * *. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than three months after the judgment, order, or proceeding was entered or taken."

termining what decisions may be reviewed in a court of appeals.[12]

Formulated in contemplation of such a statutory background, the term "final," as it appears in Federal Rule 60(b), will be presumed to be used in the same sense, there being no indication that a different meaning was intended. It follows that the "final" judgments, orders or proceedings referred to in the first sentence of that federal rule, against which the described motions may be directed, are those which terminate the litigation in the district court subject only to the right of appeal.

The time limit for making a motion under Rule 60(b), as set out in the second sentence of that rule, begins to run upon the entry of "the judgment, order or proceeding," referred to in the first sentence. Accordingly, under the federal rule, the maximum period of one year within which such a motion must be filed for reasons (1), (2) and (3) of that rule, begins to run when such district court judgment or order was entered, or such district court proceeding was taken.[13]

In so ruling we have not overlooked appellants' argument that Hirsch v. United States, 6 Cir., 186 F.2d 524, is authority for the proposition that there is no "final judgment" within the meaning of Rule 60(b), Federal Rules of Civil Procedure, until the dismissal of an appeal.

We do not agree. In that case the defendant appealed from a judgment rendered on May 13, 1949. While that appeal was pending, and without obtaining the permission of the appellate court, the district court considered and, on September 23, 1949, granted a motion which, as later characterized on review, was to correct the judgment on the basis of newly-discovered evidence. The defendant appealed from this order of modification.

On April 21, 1950, the court of appeals dismissed the first appeal. On February 2, 1951, the court of appeals decided the second appeal, holding that the district court was without authority to enter the order of modification while the first appeal was pending. The cause was therefore remanded to the district court with directions to set aside that order as void and invalid. In doing so, the court of appeals observed:

"* * * but it appearing that the Government's appeal is no longer pending, it may consider whether it may yet have a remedy under Rule 60(b) or under any of the clauses thereof, or any other remedy."

Had the court of appeals said that there was then a remedy under Rule 60 (b) (2) [newly-discovered evidence], the decision would support the position of appellants in the cases now before us. More than a year had then run since entry of the original judgment. But, as the quoted language indicates, the court of appeals did not hold that there was yet a remedy available under Rule 60(b) (2). It only suggested that consideration might be given to whether it "may yet have a remedy" under any of the clauses of Rule 60(b), or any other remedy.

As indicated in Hirsch, the interposition of an appeal deprives a district court of jurisdiction to dispose of a motion made under Rule 60(b), Federal Rules of Civil Procedure, unless steps are taken to restore jurisdiction in the district

12. Thus, in Parr v. United States, 351 U.S. 513, 518, 76 S.Ct. 912, 916, 100 L.Ed. 1377, the Court said:

"* * * The considerations underlying the historic requirement of 'finality' in federal appellate procedure require no elaboration at this late date. See Cobbledick v. United States, 309 U.S. 323 [60 S.Ct. 540, 84 L.Ed. 783]. In general, a 'judgment' or 'decision' is final *for the purpose of appeal* only 'when it terminates

the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined.' * * *" (Emphasis supplied.)

13. Nor, in our opinion, is the time enlarged by the taking of an appeal. As to this we agree with the reasoning of Professor Moore. See 7 Moore's Federal Practice, 2d ed. § 60.28, pages 320–321.

court for such purpose. Procedures are available in the courts of appeal whereby jurisdiction may be restored to the district court for the purpose of disposing of such a motion. It follows that the taking of an appeal need not curtail or terminate the one-year maximum period allowed after entry of the final decision of the district court, in which **a** Rule 60(b) motion may be filed.

As pointed out by Professor Moore, these procedures vary somewhat among the courts of appeals. 7 Moore's Federal Practice, 2d ed. § 60.30, pages 336–337. In this circuit two procedures, differing somewhat from each other, have been employed.[14] In its decision here under review, the appellate division of the District Court of Guam has indicated that the procedures described in our Greear and Creamette cases (note 14) are available in that court.

But while, for the reasons indicated, Federal Rule 60(b) does not take account of the pendency of an appeal in computing the maximum period during which a motion thereunder may be filed, we are here concerned with Rule 60(b) of the Rules of the Island Court of Guam.

It has been pointed out (note 11, above) that the Guam Rule 60(b) is virtually identical with Rule 60(b) of the Federal Rules of Civil Procedure, except that the federal rule provides for a maximum period of one year within which such a motion may be filed, whereas the Guam rule provides for a maximum period of three months. But the difficulty is that the statutory base upon which the Guam rule is superimposed differs considerably from that which provides the foundation of the federal rule. This raises the question whether the Guam rule should be given a different construction than that which we have indicated attaches to the federal rule.[15]

The federal statutes supply a meaning for the word "final" which, when carried over to the rule, requires that the maximum time for filing a Rule 60(b) motion run from entry of a district court decision terminating the litigation, whether or not an appeal is thereafter taken. But the statutes of Guam which were in effect when Guam Rule 60(b) was promulgated, may be thought to give a different meaning to the word "final," such that if this meaning is carried over to the Guam rule, the interposition of an appeal would necessarily delay the commencement of the three-months period for the filing of such a motion.

Appellants call attention to section 1049 of the Guam Code of Civil Procedure, which reads:

> "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied."

This statute does not, in terms, provide that a judgment does not become final until there has been a determination of the appeal; the reference is to the pendency and final determination of an "action," not a judgment or decision of the trial court.

But appellants also call attention to Pacific Gas & Electric Co. v. Nakano, 12 Cal.2d 711, 714, 87 P.2d 700, 702, 121 A.L.R. 417, where, on the authority of an identical statute the Supreme Court of California had this to say:

> "The decisions in this state indicate that a judgment does not become final so long as the action in which it was rendered is pending (Feeney v. Hinckley, 134 Cal. 467, 66 P. 580, 86 Am.St.Rep. 290; 15 Cal.Jur., pp. 121, 122), and an action is deemed pending until it is finally determined

---

14. Compare Greear v. Greear, 9 Cir., 288 F.2d 466, and Creamette Company v. Merlino, 9 Cir., 289 F.2d 569, with Smith v. United States, 9 Cir., 294 F.2d 771.

15. Appellants have not urged that the Guam rule is to be interpreted differently than the federal rule. They have, in fact, insisted that the two have identical meanings except for the diverse maximum periods within which a motion may be filed. But since the statute and court decision they cite suggest this further question we deal with it in this opinion.

on appeal or until the time for appeal has passed. Sec. 1049, Code Civ.Proc. * * *."

There, however, the problem was not to determine when a judgment became final for purposes of appeal, or for purposes of a Rule 60(b) motion. The question presented was whether a purported assignment of a cause of action for tort had been made before the tort claim was merged in a final judgment. For this purpose, the court ruled, a judgment does not become final until there has been a disposition of the appeal.

We do not regard Section 1049 of the Guam Code of Civil Procedure, read literally, or in the light of the Nakano case, as calling for a different construction of Guam Rule 60(b) than that which has been given the federal rule.

Appeals in civil actions in Guam are governed by Title XII of the Guam Code of Civil Procedure. Under Chapter I of that Title, entitled "Appeals in General," section 936 provides:

"A judgment, order, or decree in a civil action, except when expressly made final by this code, may be reviewed as prescribed in this title."

Section 939 in that chapter provides, in part:

"An appeal may be taken from any judgment or order of the Island Court from which an appeal lies under any provision of this code, within 10 days from the entry of said judgment or order."

Chapter II of Title XII is entitled "Appeals to the District Court." There is no section in that chapter which defines the kinds of judgments which may be reviewed.[16]

It therefore appears that, under the Guam statutory scheme, a judgment, or-

der or decree entered in a case which is susceptible of district court review, is appealable providing it is not expresssly made "final" by the Guam Code of Civil Procedure. This seems almost like a statutory characterization of appealable judgments, orders and decrees as those which are not "final."

If this is the intended meaning, and if that meaning is carried over to Guam Rules 60(b), then "final judgment" as used in that rule would seem to mean a judgment which had been disposed of on appeal, or against which the time for taking an appeal had run. If so, the three months' period in which a Rule 60(b) motion could be filed would not begin to run until one of the stated events had occurred.

Guam Rule 60(b) was prescribed by the Judicial Council of Guam on December 15, 1954, pursuant to the authority vested in it by Section 123 of the Guam Code of Civil Procedure. This and many other rules so prescribed are almost identical with their counterparts by the same number in the Federal Rules of Civil Procedure. This indicates to us that, to the extent that uniformity of rule-language was attained, the Judicial Council intended uniformity of construction. It follows that Guam Rule 60(b) carries the statutory gloss of federal Rule 60(b), rather than that of the statutes of Guam referred to above.[17]

Any other conclusion would lead to the absurdity of permitting, and indeed requiring, an appellant to withhold a Rule 60(b) motion on a ground which might well require that a judgment be set aside or substantially modified while the appellate division of the district court, unaware of the fatal flaw, explored and disposed of other attacks leveled against

---

16. However, section 963 in that chapter states a limitation as to the kinds of cases which are subject to appeal in the district court, reading:
"An appeal to the District Court may be taken from the Island Court in any case in which the District Court has jurisdiction as set forth in Section 63 of this code."

17. Under section 123 of the Guam Code of Civil Procedure, it is provided, in part:
" * * * All laws of Guam in conflict with such rules [rules prescribed by the Judicial Council of Guam] shall be of no further force after they take effect."

the judgment on appeal. If the appellate division of the District Court of Guam is as busy as our court, it does not have time to beat dead horses.

Appellants also urge that the Island Court should have permitted them to move under Island Court Rule 60(b) (6), which provides for relief for "any other reason justifying relief from the operation of the judgment." There is no outside limitation on the time during which the motion for relief under Rule 60(b) (6) must be made; the motion must be made within a reasonable time. Appellants cite Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266, which deals with Federal Rule 60(b).

The Supreme Court did state in Klapprott that " * * * petitioner's prayer for setting aside the default judgment should not be considered only under the excusable neglect, but also under the 'other reason' clause of 60(b), * * *." 335 U.S. at 614, 69 S.Ct. at 390. But the Court also indicated that relief can be had under Rule 60(b) (6) only for reasons other than those enumerated in Rule 60(b) (1) through (5). The petitioner in Klapprott had shown a reason other than excusable neglect for granting relief. But appellants here have suggested no reason other than newly-discovered evidence for relief from the judgment.

Another issue raised below and renewed here is whether appellants' notice of intention to move for a new trial should be treated as a motion. That is, if the three-month period in which the motion could be made did not begin until after appellants' appeal was dismissed by the appellate division, could appellants' notices of intention properly be treated as motions? Since, as we have held, the time for making a motion had passed by the time that the notice of intention was filed, we need not and do not decide whether the notice of intention could properly have been treated as a motion.

The decision of the appellate division of the District Court of Guam in affirming the order of the Island Court, is affirmed.