**FITZHUGH et al. v. UNITED STATES.**

**No. 4933.**

Court of Appeals of District of Columbia.

Argued March 5, 1930.

Decided April 7, 1930.

798

T. S. Plowman, of Washington, D. C., for appellants..

Henry H. Glassie, A. Leftwich Sinclair, and F. Edward Mitchell, all of Washington, D. C., for the United States.

Before MARTIN, Chief Justice; ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from an order and decree of the Supreme Court of the District of Columbia confirming the Commissioners' report of appraisement in a condemnation proceeding in which the government is procuring a site on which to erect a building for the accommodation of the Supreme Court of the United States.

The appellants are the heirs of Daniel Carroll of Duddington, one of the original proprietors of the lands embraced within the city of Washington, and of the particular land involved. The heirs were brought into the condemnation proceedings as defendants to determine what, if any, interest they had in the premises. It is sought by them to establish a fee-simple title in the alley extending through square 728, and to have it appraised at the full market value thereof.

The court instructed the Commissioners as follows: "The Commissioners are instructed that the public alleys in Square 727 and Square 728 are subject to a perpetual easement for alley purposes, and that the fee simple of any parcels of land included in any such alley, whether the same is in the owners of the abutting lots or in any other person or persons, has only such value as it fairly may be believed that a purchaser in fair market conditions would pay for the fee simple in such land subject to a perpetual easement for alley purposes, and not what such land would be worth if not incumbered with such easement. A fee simple subject to a perpetual alley easement is commonly known as a technical fee and in general has only a nominal value. In the absence of any evidence to the contrary, the Commission should appraise the value of the fee simple in the respective alleys on that basis. What the owner is entitled to is the fair market value of the property taken at the time it is taken, and if the Commissioners find that a purchaser under present fair market conditions would give nothing for the fee simple in any parcel subject to said easement for alley purposes, they should appraise the fee simple estate in said alleys at a purely nominal sum."

The Commissioners, in obedience to the instruction of the court, appraised the value of the fee in parcel 81 (square 728) as follows: "We find that the land included in said public alley has no market value, and we accordingly apraise the value of the interest of the owner of the fee simple in parcel LXXXI to be the nominal sum of $1.00."

In the negotiations between President Washington and the proprietors of the land within the limits of the federal city, Daniel Carroll with others conveyed their lands to Thomas Beall and John M. Gantt, as trustees. Under the terms of the trust Commissioners were appointed for the seat of government. The Commissioners were authorized to have the land plotted and laid out "for a Federal City, with such streets, squares, parcels and lots as the President of the United States for the time being shall approve." Under the terms of the trust the trustees were authorized to convey to the Commissioners "for the use of the United States, forever, all the said streets and such of said squares, parcels, and lots as the President shall deem proper for the use of the United States." As to the residue of the lots, "a fair and equal division shall be made of them and if no other mode of division shall be agreed upon by consent of the said Daniel Carroll of Duddington and the Commissioners for the time being, then such residue of the said lots shall be divided every other lot alternate to the said Daniel Carroll of Duddington."

Under the plan adopted, and by which the trust was carried out, the title to the streets became vested in fee in the United States. Van Ness v. City of Washington, 4 Pet. 232, 285, 7 L. Ed. 842, and the United States was authorized to select such parcels of land as it might deem proper and advisable for the use of the government. For these lands the owners were to be paid by the government at the rate of twenty-five pounds per acre. The residue of the land, after deducting the streets and the parcels thus purchased for the use of the government, was platted into squares and lots, and through the squares alleys were extended for the convenience and use of the public and of the owners of the abutting lots. As to the block in question, lots 1, 3, 4, 7, 8, 11, 12, 13, 19, 20, 21, 24, 25, 29, and 30 were assigned to Daniel Carroll, and the remaining lots, equal in number, were to be sold, agreeable to the deed of trust, for the benefit of the federal city.

To insure a "fair and equal division," the squares were measured and divided into lots with alleys under an exact computation, so as to insure to the proprietor and the government an equal number of square feet. To this end, the number of square feet was accounted not only in the lots, but also in the alley space adjacent thereto. This division was accomplished through an instrument known as the certificate of division, executed by the proprietors and the Commissioners, and recorded by the Commissioners pursuant to a Maryland Act of 1791. These certificates and plats when recorded were declared by the Maryland Act of December 28, 1793, Burch's Dig. 224, to "be sufficient and effectual to vest the legal estate in the purchasers, their heirs and assigns, according to the import of such certificates, without any deed or formal conveyance." It was held in Potomac Steamboat Company v. Upper P. S. Co., 109 U. S. 672, 3 S. Ct. 445, 4 S. Ct. 15, 27 L. Ed. 1070, that it was under and according to these certificates that the former proprietors derived their title back to the subdivided lots.

Thus it will be observed that, as a result of the trust, Carroll got back one-half of the land embraced within this square in the form of lots which were laid out abutting on a public alley, subject to the common easement for public use as an alleyway.

It thus appears that all the land within the original limits of the city of Washington, under the conveyance and trust, was brought into one title and disposed of in three different ways: (1) The fee title to the streets was vested in the United States. Van Ness v. City of Washington, supra. (2) The appropriations or reservations for the use of the United States were, by the terms of the trust, purchased at the rate of twenty-five pounds per acre, and the fee title became vested in the United States. (3) The residue of the land, after being laid out in squares, parcels, and lots, was to be divided equally between the proprietors and the Commissioners of the federal city.

In this view of the case it is clear that the heirs of Daniel Carroll are not in position to assert any title whatever to the alley here in question. If the original alleys be held to form part of the street system, then the fee in the lands embraced within the alleys immediately became vested in the United States. Of course, they can have no claim under the second subdivision, where the lands were purchased directly for the use of the government. Coming, therefore, to the third subdivision, if it be conceded that the original alleys constituted a part of the lands of which a "fair and equal division" was to be made, then the lands embraced within the alleys on partition passed in equal shares to the United States and the proprietors, along with the adjacent lots respectively assigned to each. It follows, therefore, that, upon the sale and conveyance by the United States and the proprietors of the lots assigned to them respectively, the title to the alleys passed to the purchasers and grantees of the lots abutting thereon. 3 Kent Com. (14th Ed.) 433; Buck v. Squires, 22 Vt. 484, 489; Henry v. Board of Trustees of Diocese of Kentucky, 207 Ky. 846, 847, 270 S. W. 476; Scudder v. Detroit, 117 Mich. 77, 79, 75 N. W. 286; Prall v. Burckhartt, 299 Ill. 19, 132 N. E. 280, 18 A. L. R. 992; Waterloo Condensed Milk Co. v. Voges, 316 Ill. 477, 147 N. E. 373; Dobson v. Hohenadel, 148 Pa. 367, 370, 23 A. 1128; Van Winkle v. Van Winkle, 184 N. Y. 193, 204, 77 N. E. 33; Simpson v. Dendy, 8 C. B. (N. S.) 433, 472; Berridge v. Ward, 10 C. B. (N. S.) 400, 415.

It is, therefore, unnecessary for us to determine the exact status of the title to the lands embraced within the original alleys in the city of Washington. It has been treated by Congress as being in the United States. This appears as late as the Act of February 23, 1905, 33 Stat. 733, now section 1608 et seq. of the District Code, which provides, among other things, for the closing of alleys, and, if it be an original alley, the land therein contained may be sold "for cash at a price not less than the existing value of contiguous lots." This legislation is on the theory that the title to the alleys was embraced within the trust agreement vesting in the government the title to the streets; but, whether that theory be correct or not, it is immaterial to the decision of this case, since any title which Daniel Carroll may have acquired in the alley adjacent to his lots, abutting thereon, has long since passed to the purchasers and grantees of the same.

The judgment is affirmed.