**CALVIN–HUMPHREY CORPORATION,**
a Delaware corporation,

v.

**The UNITED STATES.**

No. 295–72.

United States Court of Claims.

July 13, 1973.

William T. Hannan, Washington, D. C., attorney of record for plaintiff. De-Lancey W. Davis, Washington, D. C., of counsel.

Jonathan U. Burdick, Burke, Va., with whom was Asst. Atty. Gen. Kent Frizzell, for defendant.

Before COWEN, Chief Judge, and SKELTON, NICHOLS, KUNZIG, and BENNETT, JJ.

## ON DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

SKELTON, Judge.

This case involves the question of whether or not an abutting property owner who owns all of the property surrounding an "original" alley which is closed by action of the city council of the District of Columbia must pay for the alley in accordance with the requirements of the city council. The case is before us on defendant's motion to dismiss or for summary judgment.

The plaintiff, Calvin-Humphrey Corporation, along with the Washington Medical Center, Inc., owned lots 41, 39, and 23 in square 106 of the City of Washington, D.C. The Washington Medical Center conveyed its interest to the plaintiff. There was an alley between and abutting on the lots above-described that was an "original" alley, which means that it was an alley owned by the United States when the City of Washington was first platted and laid out. These lots abut on Avenue K. northwest and 18th Street, northwest. The plaintiff wished to build a building on these lots, and in order to do so it was necessary to close the alley above-described. It made an application to the District of Columbia City Government for such closure. The plaintiff was told that the alley could be closed provided a small tract of land which adjoins lot 39 and lot 843 of said square 106 would be dedicated for alley purposes, and provided further that the plaintiff would pay the City Government the sum of $76,904. At first, the plaintiff protested the requirements for the payment of money, the protest being made orally. However, later on the plaintiff filed a written application for the closing of the alley and agreeing to the terms required by the City Government, namely, the payment of the $76,904 and the dedication of the small tract of land for alley purposes described above. The final deal was that the plaintiff would be required to pay a total sum of $92,084 for the alley which was to be closed, minus the sum of $15,180 credit which it was to receive for the value of the new alley space which was to be dedicated by plaintiff. Both areas were valued at $80 a square foot. This required the plaintiff to pay to the D.C. Government $76,904, as stated above, which it paid.

After the deal was agreed upon, the plaintiff appeared to be highly satisfied and was in fact anxious to conclude the deal on the above basis. This is shown by the letter of April 23, 1969, signed both by the plaintiff and its attorney, who is the attorney for plaintiff in this case, which appears as Defendant's Exhibit J in its brief. This letter, addressed to the Acting Surveyor of the District of Columbia states, among other things, as follows:

> The terms outlined in your letter are acceptable to the abutting property owners, our clients, namely, Calvin-Humphrey Corporation and Washington Medical Center, Inc. * * *
>
> *    *    *    *    *    *
>
> I wish to express our appreciation to you and your office for the excellent manner in which you handled this matter, * * *.

Thereafter, the plaintiff paid said sum of $76,904 and the alley was closed by resolution of the D.C. City Council. Since the ownership of the alley was in the United States, as it was an "original" alley of the City of Washington, this sum of money was deposited in the Treasury of the United States to the credit of the government. The plaintiff proceeded to build its building on the property above the closed alley, and after the building was completed, it filed this suit for the recovery of said $76,904 claiming that for many years there had been a custom in the City of Washington not to charge abutting property owners for the closing of an alley. Furthermore, it contended that in the resolution of the city council closing the alley, it was stated that the council was proceeding under 7 D.C.Code § 303, which is a section of the Code which authorizes the closing of

an alley in exchange for other property being dedicated as an alley. Such section of the Code does not provide for any money to be paid for the alley being closed. The plaintiff therefore argues that the council having proceeded under that particular section was not entitled to collect any money from the plaintiff for the closing of the alley. The government counters with the proposition that other provisions of the Code, even though not recited in the resolution closing the alley, fully authorized the collection of money for the closing of the alley, and in particular where the alley is owned by the United States Government.

It develops that the legislation relating to the closing of alleys in the District of Columbia originated with the Act of March 3, 1901, 31 Stat. 1429. The Act was amended on February 23, 1905, by 33 Stat. 733. There was additional legislation relating to alley closing which was adopted in the so-called Street Adjustment Act of December 15, 1932, 47 Stat. 747, codified as Chapter 4 of Title 7 of the D.C.Code. D.C.Code Sections 7–302, 303, 304, 325, 330, 401, and 409 are particularly applicable to this case.

D.C.Code Section 7–302 provides that if the alley to be closed is an "original" alley, the commissioners may sell the land at a price not less than the assessed value of contiguous lots. If the alley is not an "original" alley, the title thereto shall revert to the owners of the abutting land.

Section 303 authorizes the commissioners to accept the dedication of an alley in connection with the closing of an existing alley and provides that the title to the land in the closed alley shall revert to the abutting land owners. Nothing is provided in this section for the payment of any money.

Section 304 provides that if the title to the closed alley is in the United States, the land shall be sold as provided in section 302, and if the title is not in the United States, the land shall revert to the abutting property owners.

Sections 325 and 330 provide that all money derived from the sale of land in which the United States is interested shall be paid into the Treasury of the United States by the District of Columbia Commissioners to the credit of the United States.

■ Section 401 provides that the commissioners may close any alley which is no longer useful and the property so closed will revert to the abutting property owners subject to the payment of such compensation as the D.C. Commissioners may decide. However, such section provides that if title to such land is in the United States, the property shall not revert to the owners of the abutting property, but may be disposed of by the commissioners as they see fit.

The government contends that the plaintiff waived any right it had to claim reimbursement for the money which it paid by reason of its voluntary payment thereto and that it is estopped to now claim a refund. We do not need to reach this question. It appears that although the Council only referred to section 303 in its resolution closing the alley and accepting the dedication of the new alley, it was proceeding at the same time under all the other provisions of the Code which authorized it to collect money for the United States for the closing of an "original" alley, the title to which was in the United States. That is what was done in this case and the money was paid into the Treasury of the Government. This appears to be in full conformance and compliance with the provisions of the various sections of the Code mentioned above.

■ Our attention has been called to a recent decision of the District Court of the District of Columbia in Carr v. District of Columbia, 312 F.Supp. 283 (D.D. C.1970), in which it was held that the D.C. Government was not entitled to collect money from abutting property owners for the closing of an alley. We have carefully considered that opinion and have concluded that it is confined strictly

to the closing of an alley dedicated by developers and that it does not apply to an "original" alley, the title of which is in the United States. In that case the court refers several times to the fact that the property "reverted" to the property owners. In our case, there is no reversion to the property owners because neither they nor their predecessors in title owned the land on which the alley was established, but the title thereto was in the United States. Accordingly, the decision in the *Carr* case does not apply to our case.

Therefore, the defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.