**Oliver T. CARR, Jr., et al., Appellant,**

v.

**DISTRICT OF COLUMBIA, a Municipal Corporation, et al.**

No. 74–1331.

United States Court of Appeals, District of Columbia Circuit.

Aug. 18, 1976.

Before BASTIAN,* Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

## ORDER

PER CURIAM.

On consideration of appellants' petition for rehearing, it is

ORDERED by the Court that appellants' aforesaid petition is denied.

Opinion filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

The Street Readjustment Act of the District of Columbia[1] authorizes the City Council[2] to close any street or alley which in its judgment has become useless or unnecessary,[3] and prescribes the procedures

---

* Senior Circuit Judge Bastian participated in this case but died before the petition for rehearing was filed.

1. Act of December 15, 1932, ch. 4, 47 Stat. 747, as amended, D.C.Code §§ 7–401 *et seq.* (Supp. II 1975), hereinafter cited "Street Readjustment Act."

2. The Street Readjustment Act and related legislation refer to the District of Columbia Council and the Commissioner of the District of Columbia. The District of Columbia Council and the Office of Commissioner of the District of Columbia have been abolished and replaced by the Council of the District of Columbia and the office of Mayor of the District of Columbia, respectively. D.C.Code §§ 1–131, 1–141, 1–161 (Supp. II 1975).

3. Street Readjustment Act § 1, D.C.Code § 7–401 (Supp. II 1975), provides:

The District of Columbia Council is authorized to close any street, road, highway, or alley, or any part of any street, road, highway, or alley, in the District of Columbia when, in the judgment of said Council, such street, road, highway, or alley, or such part of a street, road, highway, or alley, has been rendered useless or unnecessary, the title to the land embraced within the public space so closed to revert to the owners of the abutting property subject to such compensation therefor in money, land, or structures as the District of Columbia Council, in its judgment, may find just and equitable, in view of all the circumstances of the case affecting near-by property of abutters and nonabutters: *Provided*, That if the title to such land be in the United States the property shall not revert to

through which closures may eventuate. The Act provides that "the title to the land embraced within the public space so closed," if not vested in the United States, shall "revert to the owners of the abutting property subject to such compensation therefor in money, land or structures as the District of Columbia Council, in its judgment, may find just and equitable,[4] in view of all the circumstances of the case affecting near-by [*sic*] property of abutters and nonabutters."[5] The Act further provides "[t]hat if the title to such land be in the United States the property shall not revert to the owners of the abutting property but may be disposed of . . . to the best advantage of the locality and the properties therein and thereby affected . . . or

also," unless its use is requested by a federal agency, "be sold[6] . . . ."[7] Sales of United States alley space must be "for cash at a price not less than the assessed value of contiguous lots,"[8] and "[a]ll money derived from the sale of land in which the United States is interested . . . [must] be paid into the treasury of the United States . . . to the credit of the United States."[9]

Appellants submitted an application for the closing of an alley abutting lots to which they held legal title as trustees for a business organization. It was then, and apparently for a long time thereafter, assumed both by appellants and by District officials that the subject of the application was an "original" alley, owned in fee simple

the owners of the abutting property but may be disposed of by the Commissioner of the District of Columbia to the best advantage of the locality and the properties therein and thereby affected, which properties thenceforth shall become assessable on the books of the tax assessor of the District of Columbia in all respects as other private property in the District; or also said property be sold as provided in section 7–302 of this title, unless the use of such land is requested by some other department, bureau, or commission of the government of the United States for purposes not otherwise inconsistent with the proper development of the District of Columbia: *Provided further,* That the said closing by said Council is made expedient or advisable by reason of change in the highway plan or by reason of provision for access or better access to the abutting or nearby property and the convenience of the public by other street, road, highway, or alley facilities, or by reason of the acquisition by the District of Columbia or by the United States of America for school, park, playground, or other public purposes, of all the property abutting on the street, road, highway, or alley, or part of a street, road, highway, or alley, proposed to be closed or for other public reasons: *And provided further,* That the proposed closing of any street, road, highway, or alley, or any parts thereof as provided for in this chapter shall be referred to the National Capital Planning Commission for its recommendation.

4. Street Readjustment Act, §§ 2 to 8, as amended, D.C.Code §§ 7–402 to 7–408 (1973).

5. Street Readjustment Act, § 1, D.C.Code § 7–401 (Supp. II 1975), quoted *supra* note 3. As judicially construed, this provision authorizes

an exaction of compensation from property owners to whom the public space reverts only if neighboring property owners could be adversely affected by the closing, compensation in those instances serving to protect the District from future liability to such owners. *Carr v. District of Columbia (Carr I),* 312 F.Supp. 283, 285–286 (D.D.C.1970), *aff'd without opinion,* No. 24,406 (D.C. Cir. Sept. 28, 1971). And see note 7 *infra.* The Act itself provides that upon objection by an interested party to a closing order, an in rem proceeding shall be brought for closure and for ascertainment of damages and assessment of benefits resulting therefrom. § 5, as amended, D.C.Code § 7–405 (1973).

6. Pursuant to D.C.Code § 7–302 (1973). See note 24 *infra.*

7. Street Readjustment Act § 1, D.C.Code § 7–401 (Supp. II 1975), quoted *supra* note 3. The Court of Claims has concluded that the holding in *Carr v. District of Columbia (Carr I),* *supra* note 5, "is confined strictly to the closing of an alley dedicated by developers and that it does not apply to an 'original' alley, the title of which is in the United States." *Calvin-Humphrey Corp. v. United States,* 480 F.2d 1323, 1325–1326, 202 Ct.Cl. 519, (1973).

8. D.C.Code § 7–302 (1973) incorporated into Street Readjustment Act by § 1, D.C.Code § 7–401 (Supp. II 1975), quoted *supra* note 3.

9. D.C.Code § 7–325 (1973), complementing D.C.Code § 7–302 (1973) which is incorporated into the Street Readjustment Act by § 1, D.C. Code § 7–401 (Supp. II 1975), quoted *supra* note 3.

by the United States.[10] After compliance with the statutory procedures applicable, the City Council ordered that the alley be closed on the condition that appellants pay $196,200 as the fair market value of the public space the alley had occupied.

Appellants deposited that sum in escrow and the alley was closed, whereupon appellants sued in the District Court for a judgment declaring that the District could not exact compensation for the alley space.[11] After suffering an adverse decision and judgment in that court,[12] appellants took the present appeal. While the appeal was under submission, appellants filed motions asserting for the first time that, according to information recently acquired, the United States did not own the alley at the time of closure.[13] On this new ground, appellants contended that their challenge to the assessment of the fair market value of the alley space was the stronger.[14]

Our decision was to affirm the District Court's judgment on all issues premised on fee simple ownership of the alley by the United States, but to remand the case for modification of the judgment to avoid any prejudice to an action by appellants in the Court of Claims for recovery of the $196,200

on the theory that the United States lacked ownership.[15] Now, on appellants' petition for rehearing, we adhere to that decision for reasons more fully delineated herein than before.

## I

■ Appellants' contention that the United States lacked ownership of the subject alley upon closure has no proper place in this appeal. Throughout the proceedings before the City Council and later in the District Court, all parties believed that the United States had fee simple title to the alley space and acted accordingly. As a result, there was no effort to build a foundation in the record for judicial consideration, either in the District Court or here, of the hypothesis which appellants now advance.[16] As ever so recently we stated, "our adjudicatory authority extends only to questions amply grounded in the record," [17] and that observation is fully apropos here. Numerous documents which are vital links in appellants' lack-of-title argument [18] are completely outside the record before us, and "the evidentiary virtues appellant[s] attribute[] to them cannot be left to mere as-

---

**10.** Original streets and alleys are those located within the original boundaries of the Federal City. For historical discussions, see *Morris v. United States*, 174 U.S. 196, 19 S.Ct. 649, 43 L.Ed. 946 (1898); *Van Ness v. City of Washington*, 29 U.S. (4 Pet.) 232, 7 L.Ed. 842 (1830); *Pratt v. Law*, 13 U.S. (9 Cranch) 456, 3 L.Ed. 791 (1815); *Fitzhugh v. United States*, 59 App. D.C. 285, 40 F.2d 797 (1930).

**11.** The City Council's order for payment of other sums has not been contested.

**12.** *Carr v. District of Columbia (Carr II)*, 371 F.Supp. 293 (D.D.C.1974), *aff'd without opinion*, 172 U.S.App.D.C. 224, 521 F.2d 324 (1975).

**13.** The claim is the United States either (a) never had title to alleys in the Federal City or (b) if it did it conveyed that title to the original purchasers of abutting parcels, one or more of whom appellants succeed in interest. This position is rested on the brief filed on behalf of the appellants in No. 73–2053, *1776 K St. Associates v. District of Columbia*, 169 U.S.App. D.C. 301, 515 F.2d 1018 (1975), and companion cases, portions of which brief our appellants

adopt. The argument chronicles an investigation, legal and factual, into a series of legislative enactments, presidential proclamations and building regulations contemporaneous with establishment of the Federal City, and the exploration extends to a variety of deeds, maps, records of land divisions and dispositions, and even legal opinions and correspondence.

**14.** See note 5 *supra*.

**15.** *Carr v. District of Columbia (Carr II)*, *supra* note 12.

**16.** Therein lies one of the shortcomings haunting appellants' title position. What they really seek is not a change in case-theory on a stable record—like that rejected in *Miller v. Avirom*, 127 U.S.App.D.C. 367, 384 F.2d 319 (1967)— but a fresh approach based substantially on newly-discovered evidence, see note 13 *supra*, which has yet to be put to the test.

**17.** *United States v. Pinkney*, 543 F.2d 908, at 915 (D.C. Cir. 1976).

**18.** See note 13 *supra*.

sumption."[19] Moreover, appellants' claim has never been tendered for, much less subjected to, adversary scrutiny in the crucible of an evidentiary hearing. If appellants are to litigate their newly-found theory, it must be done in another lawsuit.

■ Since we do not understand that appellants are in any wise abandoning their original approach in this litigation, we must consider the appeal on the predicate upon which the District Court ruled—that the United States did own the alley. We think the court was correct in its conclusion that appellants, who upon closure of the alley were permitted to acquire the alley space in fee simple, could properly be assessed its fair market value. The situation presented here is quite unlike that where the District of Columbia closes one of its own alleys, thereby causing the property to statutorily "revert to the owners of the abutting property."[20] Where the alley closed belongs to the United States, the Street Readjustment Act provides, precisely contrarily, that "the property shall not revert to the owners of the abutting property."[21] As the Court of Claims has explained, "there is no reversion to the property owners because neither they nor their predecessors in title owned the land on which the alley was established, but the title thereto was in the United States."[22] In such instances, the Act explicitly confers upon the City Council an option: "the property . . . [(a)] may

be disposed of . . . to the best advantage of the locality and the properties therein and thereby affected . . . or [(b)] also said property [may] be sold" unless its use is desired by a federal agency.[23] The Act emphasizes that in the event that the second option is selected, the sale is for the account of the United States.[24]

Appellants insist, however, that the two statutory alternatives are mutually exclusive. They argue that where, as here, a United States alley is disposed of to the best advantage of the locality, the disposition must be free of charge. The District Court found this argument unacceptable,[25] and so do we. In the first place, not only does the statutory language not suggest appellants' construction, but instead it quite plainly connotes the opposite. The Act states that the property may be disposed of without sale "or also [the] property [may] be sold";[26] "also," in this context, naturally and popularly means "[i]n addition: as well: besides: too."[27] And for even more impressive reasons, we are convinced that both of the options are exercisable simultaneously.

The Act empowers the City Council to close only "useless or unnecessary alleys."[28] Abandonment of such an alley and sale of the public space into the private domain is usually calculated to foster real estate development in the area[29] and thereby, in this very important sense, to work "to the best

19. *Washington v. United States*, 130 U.S.App. D.C. 374, 380 n. 31, 401 F.2d 915, 921 n. 31 (1968).

20. See Street Readjustment Act § 1, D.C.Code § 7–401 (Supp. II 1975), quoted *supra* note 3.

21. *Id.*

22. *Calvin-Humphrey Corp. v. United States, supra* note 7, 480 F.2d at 1326.

23. Street Readjustment Act § 1, D.C.Code § 7–401 (Supp. II 1975), quoted *supra* note 3.

24. Sales of United States alley space are to be made as provided in D.C.Code § 7–301 (1973). Street Readjustment Act § 1, D.C.Code § 7–401 (Supp. II 1975), quoted *supra* note 3. D.C.Code § 7–325 (1973) specifies additionally that "[a]ll money derived from the sale of land in which the United States is interested, under the provi-

sions of [designated sections, of which § 7–302 is one], shall be paid into the treasury of the United States . . . to the credit of the United States."

25. *Carr v. District of Columbia (Carr II), supra* note 12, 371 F.Supp. at 297–298.

26. Street Readjustment Act § 1, D.C.Code § 7–401 (Supp. II 1975), quoted *supra* note 3.

27. Webster's Third New International Dictionary 62 (1964).

28. Street Readjustment Act § 1, D.C.Code § 7–401 (Supp. II 1975), quoted *supra* note 3.

29. See *Carr v. District of Columbia (Carr I), supra* note 5, 312 F.Supp. at 285–286.

advantage of the locality and the properties therein and thereby affected." [30] If, as appellants contend, compensation cannot be demanded where that advantage accrues, the statutory authorization of compensatory sales [31] is well nigh negated. Whenever possible, a statute is to be interpreted so as to allow all of its parts to operate,[32] and to avoid absurd results.[33]

Beyond that, we perceive no inconsistency between compensatory sales of United States alley space and the public weal in the larger sense. Beside enrichment of the public fisc through sale proceeds, closure of useless or unnecessary alleys invariably portends other advantages to the community at large. Maintenance costs are eliminated, as is liability for personal injury sustained on the space, and the realty-tax base is broadened.[34] We are unwilling to assume that Congress did not have these valuable benefits in mind when it passed the Street Readjustment Act, nor can we believe that Congress had the federal interest any less at heart. As the District Court observed, the Act

> distinguishes between United States and District of Columbia land and gives the City Council express authority to charge for United States property. Thus, it reflects a congressional purpose to allow the District of Columbia to consider the

interests of the United States as well as its own interests when it disposes of Federal land. . . . Because this case involves an original United States alley the fact that advantages accrued to the District of Columbia by its closing does not preclude the District from adding conditions for the benefit and protection of the United States.[35]

We think, too, that appellants' construction of the Street Readjustment Act would bring it into unnecessary conflict with related legislation. Alley closings were originally authorized in 1901[36] by a statute, still extant,[37] which is confined in operation to alleys and minor streets.[38] Like the Street Readjustment Act,[39] the 1901 Act provides that "[i]f the alley [closed] is not an original alley the title thereto shall revert to the owners of the land abutting thereon;" [40] but it is the 1901 Act that contains the provisions relative to sale of United States alley space, which the Street Readjustment Act incorporates.[41] "If the alley to be closed is an original alley," the 1901 Act ordains, "[the City Council] may sell the land contained therein for cash at a price not less than the assessed value of contiguous lots," [42] and "[a]ll money derived from [its] sale . . . shall be paid into the treasury of the United States . . . to the credit of the United States." [43] Significantly, these provisions omit any reference to

---

**30.** Street Readjustment Act § 1, D.C.Code § 7–401 (Supp. II 1975), quoted *supra* note 3.

**31.** See note 24 *supra*.

**32.** *Administrator, FAA v. Robertson*, 422 U.S. 255, 261, 95 S.Ct. 2140, 2145, 44 L.Ed.2d 164, 171 (1975); *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207, 225 (1973); *Richards v. United States*, 369 U.S. 1, 10–14, 82 S.Ct. 585, 591–593, 7 L.Ed.2d 492, 499–501 (1962); *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859, 863 (1961); *City of New York v. Train*, 161 U.S.App.D.C. 114, 130, 494 F.2d 1033, 1049 (1974), *aff'd*, 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975).

**33.** *Yankee Network v. FCC*, 71 App.D.C. 11, 18, 107 F.2d 212, 219 (1940); *Porter v. Nowak*, 157 F.2d 824, 826 (1st Cir. 1946); *United States v. Cook*, 311 F.Supp. 618, 621 (W.D.Pa.1970).

**34.** See *Carr v. District of Columbia (Carr I)*, *supra* note 5, 312 F.Supp. at 285–286.

**35.** *Carr v. District of Columbia (Carr II)*, *supra* note 12, 371 F.Supp. at 297.

**36.** Act of Mar. 3, 1901, ch. 854, 31 Stat. 1429, as amended, D.C.Code §§ 7–301 *et seq.* (1973).

**37.** See note 47 *infra*.

**38.** See D.C.Code §§ 7–301 *et seq.* (1973).

**39.** See note 3 *supra*.

**40.** D.C.Code § 7–302 (1973).

**41.** See notes 3 and 24 *supra*.

**42.** D.C.Code § 7–302 (1973).

**43.** D.C.Code § 7–325 (1973). See note 24 *supra*.

"the best advantage of the locality and the [nearby] properties." [44]

The Street Readjustment Act, enacted in 1932,[45] extends the City Council's power of closure to all streets, roads and highways as well as alleys.[46] Nonetheless, it expressly leaves the 1901 Act intact.[47] Indeed, the Street Readjustment Act specifies that "in any case to which more than one of these laws is applicable, the . . . Council may elect the one under which . . . [it] will proceed." [48] Statutes in *pari materia* are to be read together as if they were but one law,[49] and both are to be given effect.[50] Our duty to do that, and in the process to reject appellants' interpretation is thus clear.

## II

There remains appellants' alternative claim that they cannot be made to pay for the alley space in question because, they say, the United States did not own the alley. As we have held, that claim, for lack of an underlying record, is not now before us,[51] but that does not mean that it cannot be asserted in another fashion. There are, however, basic difficulties incidental to such an undertaking, and to these we now turn.[52]

One problem arises at the outset from the fact that this case was litigated and decided in the District Court exclusively on the theory that the alley space was property of the United States. The District Court's decision, adverse to appellants, was given effect by a judgment which was final in every sense of the word,[53] and the court was not asked to reconsider or change it.[54] So, in due course the judgment passed beyond the District Court's broad revisory jurisdiction[55] and thereafter was substantively alterable by only two approaches.[56] One, of course, is the present appeal, which, we repeat, is restricted to review of the judgment on the preexisting record and consequently does not reach appellants' new-evi-

**44.** See D.C.Code § 7-302 (1973).

**45.** See note 1 *supra.*

**46.** Street Readjustment Act § 1, D.C.Code § 7–401 (Supp. II 1975), quoted *supra* note 3; S.Rep. No. 688, 72nd Cong., 1st Sess. 2 (1932).

**47.** "Nothing in this chapter shall be construed to repeal the provisions of any existing law authorizing the Commissioner of the District of Columbia or the District of Columbia Council to close streets, roads, highways, or alleys, not inconsistent with the provisions of this chapter. . . ." Street Readjustment Act § 9, D.C. Code § 7–409 (1973).

**48.** *Id.*

**49.** *Freight Handlers Bhd. v. Railroad Retirement Bd.,* 99 U.S.App.D.C. 217, 224, 239 F.2d 37, 44 (1957); *Allen v. United States,* 128 U.S. App.D.C. 207, 208, 386 F.2d 634, 635 (1967); *General Motors Acceptance Corp. v. Whisnant,* 387 F.2d 774, 775 (5th Cir. 1968); *Hallenbeck v. Penn Mut. Life Ins. Co.,* 323 F.2d 566, 571–572 (4th Cir. 1963); *F. P. Baugh, Inc. v. Little Lake Lumber Co.,* 297 F.2d 692, 696, 3 A.L.R.3d 625 (9th Cir. 1961), *cert. denied,* 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 404 (1962).

**50.** *Lietz v. Flemming,* 264 F.2d 311, 313 (6th Cir.), *cert. denied,* 361 U.S. 820, 80 S.Ct. 66, 4 L.Ed.2d 66 (1959); *Rawls v. United States,* 331 F.2d 21, 28 (8th Cir. 1964).

**51.** See text *supra* at notes 16–19.

**52.** We address these problems not only because our leave for new litigation may be necessary, see *Gueder v. Paeschae & Frey Co. v. Clark,* 288 F.2d 1, 3–4, 85 A.L.R.2d 766 (7th Cir.), *cert. denied,* 368 U.S. 826, 82 S.Ct. 47, 7 L.Ed.2d 30 (1961), but also because some modification of the District Court's judgment to accommodate such litigation is in any event desirable.

**53.** See, *e. g., Republic Natural Gas Co. v. Oklahoma,* 334 U.S. 62, 68, 68 S.Ct. 972, 976, 92 L.Ed. 1212, 1219–1220 (1948); *Gospel Army v. Los Angeles,* 331 U.S. 543, 546, 67 S.Ct. 1428, 1430, 91 L.Ed. 1662, 1665 (1947); *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911, 915–916 (1945).

**54.** See Fed.R.Civ.P. 50(b), 52, 59(a), (e).

**55.** "[I]nterlocutory judgments are . . . subject to the complete power of the court rendering them to afford such relief from them as justice requires." Advisory Committee Note to 1946 Amendment of Rule 60(b). See also *John Simmons Co. v. Griere Bros. Co.,* 258 U.S. 82, 88, 42 S.Ct. 196, 198, 66 L.Ed. 475, 478–479 (1922); *Hodgson v. UMW,* 153 U.S.App.D.C. 407, 473 F.2d 118 (1972).

**56.** See Advisory Committee Note to Fed.R. Civ.P. 60(b).

dence claim.[57] The other is the methodology addressed by Federal Civil Rule 60(b),[58] which leaves open two alternative routes to possible relief from adjudicative conclusiveness.[59] While we are satisfied that the first is closed to appellants, it appears the second may not be.

Rule 60(b) empowers district courts to entertain motions seeking to relieve a party from a final judgment for either of six specified reasons.[60] One is "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." [61] All Rule 60(b) motions are subject to the requirement that they "be made within a reasonable time," [62] and some, including those grounded on newly-discovered evidence, must in any event be made "not more than one year after the judgment

. . . was entered . . . ." [63] A motion by appellants to reopen the District Court's judgment would not survive the last demand, and might encounter trouble even with others.

We are not informed as to why the critical historical evidence, allegedly demonstrating that the United States did not own the alleys in question,[64] could not with diligence have been unearthed sooner. Nor do we have a record on which we could determine satisfactorily whether appellants' memorandum, by which the title challenge was first made,[65] followed promptly on the heels of their acquisition of that evidence.[66] But it is indisputable that the memorandum was not filed until slightly more than a year after entry of the judgment.[67] We see no elasticity in Rule 60(b)'s one-year time

---

57. See text *supra* at notes 16–19.

58. "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." Fed.R. Civ.P. 60(b).

59. We speak of final judgments only. See note 55 *supra*.

60. See note 58 *supra*.

61. See note 58 *supra*.

62. See note 58 *supra*.

63. See note 58 *supra*. See also *Ackermann v. United States*, 340 U.S. 193, 197, 71 S.Ct. 209, 211, 95 L.Ed. 207, 210 (1950); *Klapprott v. United States*, 335 U.S. 601, 608 n. 1, 69 S.Ct. 384, 387 n. 1, 93 L.Ed. 266, 274 n. 1, *modified*, 336 U.S. 942, 69 S.Ct. 389, 93 L.Ed. 1099 (1949); *Boehm v. Office of Alien Property*, 120 U.S.App.D.C. 100, 101, 344 F.2d 194, 195 (1965); *Tobriner v. Chefer*, 118 U.S.App.D.C. 246, 247, 335 F.2d 281, 282 (1964).

64. See note 13 *supra*.

65. See text *supra* at note 13.

66. See text *supra* at note 13.

67. The final judgment was entered on the District Court's docket on February 12, 1974, and became effective at that time. Fed.R.Civ.P. 58, 79(a); *Weedon v. Gaden*, 136 U.S.App.D.C. 1, 4, 419 F.2d 303, 306 (1969). It is from that date that Rule 60(b)'s one-year period is to be measured. *Corn v. Guam Coral Co.*, 318 F.2d 622, 629 (9th Cir. 1963); *Valmont Indus., Inc. v. Yuma Mfg. Co.*, 50 F.R.D. 408, 410 (D.Colo. 1970), *aff'd*, 446 F.2d 1193 (10th Cir. 1971), *cert. denied*, 405 U.S. 922, 92 S.Ct. 960, 30 L.Ed.2d 793 (1972). Appellants' memorandum was not filed until February 17, 1975.

limit on the motions to which it applies;[68] it is not judicially extendable,[69] nor does an appeal from the judgment have the effect of tolling or enlarging it.[70] And though the timing of such a motion is otherwise free from criticism, it fails if it falls outside the one-year period.[71] It is thus evident that a Rule 60(b) motion to reopen the judgment would not be available to appellants.[72]

▮ Rule 60(b) contains, however, a saving clause making clear, among other things, that it "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding. . . ."[73] This dispensation, while not an affirmative grant of power,[74] preserves the historical authority of the courts of equity to reform judgments in special circumstances.[75] The one-year limit on certain of the Rule 60(b) motions is inapplicable to the independent action,[76] leaving it as the method—indeed, the only method—to be had by federal-court litigants whose remedy by motion has become time-barred.[77]

**68.** See note 58 *supra.*

**69.** Fed.R.Civ.P. 60(b). See also *Nyysonen v. Bendix Corp.,* 356 F.2d 193, 194 (1st Cir.), *cert. denied,* 385 U.S. 846, 87 S.Ct. 43, 17 L.Ed.2d 77 (1966).

**70.** *Greater Boston Television Corp. v. FCC,* 149 U.S.App.D.C. 322, 334, 463 F.2d 268, 280 (1971), *cert. denied,* 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972); *Transit Cas. Co. v. Security Trust Co.,* 441 F.2d 788, 791 (5th Cir.) *cert. denied,* 404 U.S. 883, 92 S.Ct. 211, 30 L.Ed.2d 164 (1971); *Corn v. Guam Coral Co., supra* note 67, 318 F.2d at 629 n. 13. That is because a timely Rule 60(b) motion predicated on newly-discovered evidence can be made notwithstanding pendency of the appeal. The procedure acceptable in this circuit is set forth in *Smith v. Pollin,* 90 U.S.App.D.C. 178, 179, 194 F.2d 349, 350 (1952). See generally 7 J. Moore, Federal Practice ¶ 60.30[2] (2d ed. 1948); 11 C. Wright and A. Miller, Federal Practice § 2873 (1973).

**71.** *Ackermann v. United States, supra* note 63, 340 U.S. at 197, 71 S.Ct. at 211, 95 L.Ed. at 210; *Tobriner v. Chefer, supra* note 63, 118 U.S.App. D.C. at 247, 335 F.2d at 282.

**72.** We are advertent to clause (6) of Rule 60(b) authorizing a motion for "any other reason justifying relief from the operation of the judgment." See note 58 *supra.* And we note that while clause (6) motions must, like all Rule 60(b) motions, be made within a reasonable time, they need not be made within one year if the time is otherwise reasonable. See note 58 *supra.* As has been held in many cases, however, clause (6) and the first five clauses of Rule 60(b) are mutually exclusive, with the result that clause (6) affords no basis for relief at any time available under either of the earlier clauses. *E. g., Lubben v. Selective Serv. Sys. Local Bd. No. 27,* 453 F.2d 645, 651, 14 A.L.R. Fed. 298 (1st Cir. 1972); *United States v. Erdoss,* 440 F.2d 1221, 1223 (2d Cir.), *cert. denied,* 404 U.S. 849, 92 S.Ct. 83, 30 L.Ed.2d 88 (1971); *Gulf Coast Bldg. & Supply Co. v. Electrical Workers Local 480,* 460 F.2d 105, 108 (5th Cir.

1972); *Sunfire Coal Co. v. UMW,* 335 F.2d 958, 962 (6th Cir. 1964), *cert. denied,* 379 U.S. 990, 85 S.Ct. 701, 13 L.Ed.2d 610 (1965). That appears to have been the view already taken in this circuit, *Tobriner v. Chefer, supra* note 63, 118 U.S.App.D.C. at 247–248, 335 F.2d at 282–283, and in any event we adopt it here. The historical antecedents of Rule 60(b)(6) suggest that construction, the very cast of Rule 60(b) and the language of clause (6) strongly indicate it, and a different construction would render the one-year time limit applicable to clauses (1) to (3) meaningless. See 7 J. Moore, Federal Practice ¶ 60.27[1] (2d ed. 1948). We thus conclude that appellants could not avail themselves of clause (6).

**73.** See note 58 *supra.*

**74.** *Simons v. United States,* 452 F.2d 1110, 1116 (2d Cir. 1971).

**75.** See Advisory Committee Note to 1946 Amendment of Rule 60(b); *West Virginia Oil & Gas Co. v. George E. Breece Lumber Co.,* 213 F.2d 702, 706 (5th Cir. 1954). The independent action seeking relief from a judgment is, of course, to be distinguished from the ancillary common law and equitable remedies specifically abolished by Rule 60(b). See note 58 *supra;* Advisory Committee Note to 1946 Amendment of Rule 60(b).

**76.** *In re Casco Chem. Co.,* 335 F.2d 645, 652 (5th Cir. 1964); *Fiske v. Buder,* 125 F.2d 841, 845 (8th Cir. 1942); *Crosby v. Mills,* 413 F.2d 1273, 1276 (10th Cir. 1969). The independent action is, however, subject to the equitable doctrine of laches. *In re Casco Chem. Co., supra,* 335 F.2d at 652; *Fiske v. Bender, supra,* 125 F.2d at 845–846; *Crosby v. Mills, supra,* 413 F.2d at 1276.

**77.** Each of the various Civil Rules authorizing motions seeking some modification of a final judgment is subject to a rigid time requirement. See Fed.Civ.P. 50(b), 52, 59(a), (e), 60(b). And "[i]f the right to make a motion is lost by the

We are mindful that "the exception for equitable interposition by independent suit rests on 'stringent' rules limited to circumstances 'which render it manifestly unconscionable that a judgment be given effect.' "[78] But we have recognized that iniquity in a judgment may sometimes be made to appear by evidence emerging after its rendition.[79] To be sure, the power to upset judgments is to be exercised guardedly;[80] as we have warned,

> in an independent action seeking relief from a judgment on the basis of newly-discovered evidence and asking for a new trial the plaintiff must meet the same substantive requirements as govern a motion for like relief under Rule 60(b): he must show that the evidence was not and could not by due diligence have been discovered in time to produce it at trial; that it would not be merely cumulative; and that it would probably lead to a judgment in his favor.[81]

If, however, appellants can meet these conditions, the judgment of which they complain is not immune to judicial revision.

### III

The further and final problem we encounter relates to where an independent action by appellants might be maintained.[82] Two forums, in the alternative, have something to offer.[83] The first is the District Court, which rendered the judgment and which ordinarily would be the preferred choice if indeed not the only one.[84] Appellants' situation, however, is somewhat abnormal because of the relationship of the United States to the matter they wish to litigate. We refer, of course, to the doctrine of sovereign immunity; the United States cannot be sued without its consent,[85] and no court has jurisdiction to entertain a suit against the United States save as it has consented to be sued therein.[86] It is not at all clear to us that appellants could avoid

expiration of the time limits fixed in these rules, the only other procedural remedy is by a new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an action." Advisory Committee Note to 1946 Amendment of Rule 60(b).

78. *Greater Boston Television Corp. v. FCC, supra* note 70, 149 U.S.App.D.C. at 333, 463 F.2d at 279, quoting 7 J. Moore, Federal Practice ¶ 60.37[1] at 623 (2d ed. 1948).

79. *Philippine Nat'l Bank v. Kennedy,* 111 U.S. App.D.C. 199, 295 F.2d 544 (1961).

80. *Greater Boston Television Corp. v. FCC, supra* note 70, 149 U.S.App.D.C. at 331–332, 463 F.2d at 277–278; *Crosby v. Mills, supra* note 76, 413 F.2d at 1276. For a listing of the essential elements of an independent action, *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 79 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970), quoting *National Sur. Co. v. State Bank,* 120 F. 593, 599, 61 L.R.A. 394 (8th Cir. 1903).

81. *Philippine Nat'l Bank v. Kennedy, supra* note 79, 111 U.S.App.D.C. at 200, 295 F.2d at 545 (footnotes omitted).

82. See note 52 *supra.*

83. Independent actions left open by Fed.R. Civ.P. 60(b) are not confined to the court that rendered the judgment attacked, but may be brought in any other court of competent juris-

diction. See, e. g., *Hadden v. Rumsey Prods., Inc.,* 196 F.2d 92, 95 (2d Cir. 1952); *Locklin v. Switzer Bros., Inc.,* 335 F.2d 331, 334 (7th Cir. 1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 652, 13 L.Ed.2d 557 (1965).

84. The District Court would have ancillary jurisdiction over such an action despite any lack of another basis for jurisdiction. *Pacific R.R. v. Missouri Pac. Ry.,* 111 U.S. 505, 522, 4 S.Ct. 583, 592, 28 L.Ed. 498, 504 (1884); *Martina Theater Corp. v. Schine Chain Theatres, Inc.,* 278 F.2d 798, 800 n. 1 (2d Cir. 1960); *West Virginia Oil & Gas Co. v. George E. Breece Lumber Co., supra* note 75, 213 F.2d at 707; *Crosby v. Mills, supra* note 76, 413 F.2d at 1275–1276.

85. *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 686–687, 69 S.Ct. 1457, 1459–1461, 93 L.Ed. 1628, 1633–1634 (1949); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–770, 85 L.Ed. 1058, 1061 (1941); *Ickes v. Fox,* 300 U.S. 82, 96, 57 S.Ct. 412, 417, 81 L.Ed. 525, 531 (1937); *Morrison v. Work,* 266 U.S. 481, 486, 45 S.Ct. 149, 151–152, 69 L.Ed. 394, 397 (1925).

86. *United States v. Sherwood, supra* note 85, 312 U.S. at 586–587, 61 S.Ct. at 770, 85 L.Ed. at 1061–1062; *United States v. United States Fidelity & Guar. Co.,* 309 U.S. 506, 514, 60 S.Ct. 653, 657, 84 L.Ed. 894, 899–900 (1940); *United States v. 3,317.39 Acres of Land,* 443 F.2d 104, 106 (8th Cir. 1971), *cert. denied,* 404 U.S. 1025, 92 S.Ct. 674, 30 L.Ed.2d 675 (1972).

difficulty on this account in the District Court, or how they would fare should they face it.

■ What appellants seek ultimately is recovery of $196,200, the conceded fair market value of the alley space closed, on payment of which the City Council conditioned the closure. Before resorting to the District Court, appellants deposited that sum in escrow pending a judicial determination of the Council's authority to impose that condition. It was because the monies were held under that arrangement, and not paid over to the United States, that the District Court concluded that appellants' action for a declaration as to the right to the escrowed fund was maintainable.[87] Now, however, with our affirmance of the District Court's judgment against appellants,[88] the situation may have changed radically.

The record discloses without controversy that the escrow was designed to await the conclusion of litigation over the right to the fund. We understand that in the event of a final judicial determination that the assessment of fair market value against appellants was valid, the fund is to be turned over to the District of Columbia for deposit in the United States treasury. But since the escrow agreement itself is not in the record on this appeal, we are unable to precisely gauge its effect in the present state of affairs.

From the common assumption, when the escrow was created, that the alley was United States property, was the judicial determination contemplated as the terminal point of the escrow a final decision of the issues as framed on that assumption? If so, was the judicial determination in mind the initial decision by the District Court, or this court's decision on appeal, or action by the Supreme Court following an application for further review? Or was it, rather, the parties' intention that the escrow arrangement was also to accommodate additional litigation, though not anticipated at the time, such as another effort by appellants on their new alley-ownership theory?

We pretermit, as we must, these questions in full realization that upon their resolution hangs the continued availability of the District Court as the forum for an independent action. For, without a doubt, the moment the escrowed fund is paid to the United States, should that occur, sovereign immunity will come into play and the jurisdiction of the District Court will cease.[89]

---

87. The District Court explained:

6. Although any money received by the District must be deposited into the United States Treasury, the United States cannot be joined as a party in this action. The United States has waived sovereign immunity in the district court for claims against it for money damages not exceeding $10,000 in amount, 28 U.S.C. § 1346(a)(2) (1970). Since this claim involves amounts in excess of $50,000, the United States cannot be joined. See Washington Medical Center, Inc. v. District of Columbia, Civil Action No. 1093-71 (D.D.C., April 11, 1972) (Corcoran, J.).

7. Since the United States cannot be joined, the court must determine whether the United States is an "indispensable" party to this action. Fed.R.Civ.P. 19(b).

8. In this action the United States is not an indispensable party within the meaning of Fed.R.Civ.P. 19(b). Plaintiffs here seek a declaratory judgment. The sole issue raised is whether the District of Columbia has authority to charge plaintiffs the fair market value for alley space closed pursuant to The Street Readjustment Act of the District of Columbia, supra. Congress has delegated to the District of Columbia complete authority to close United States alleys. . . . Therefore, a judgment rendered in the United States' absence would be entirely adequate and would not prejudice United States' interests. More importantly, since the funds at stake in this action have not been deposited into the United States Treasury, but instead have been placed in an escrow account in The Riggs National Bank, judgment here for plaintiffs would neither run against nor be satisfied from United States funds. Rather, judgment would simply declare the rights of the parties who represent all the necessary interests in such escrow funds. In addition, no party would be subject to the threat of double liability which would be present had the District of Columbia already received and paid the funds to the United States.

Carr v. District of Columbia (Carr II), supra note 12, 371 F.Supp. at 296–297.

88. See Part I supra.

89. See Mine Safety Appliances Co. v. Forrestal, 326 U.S. 371, 374–375, 66 S.Ct. 219, 221, 90 L.Ed. 140, 144–145 (1945); In re Escheat of

Nevertheless, because of our uncertainty as to the terms of the escrow, and because the decision is appellants', the District Court's judgment should be modified to leave the door open to an independent action in that court should appellants decide to attempt it.[90]

The alternative is the Court of Claims,[91] and its availability likewise is dependent on the circumstances we cannot fully measure. We do not suggest that that court could entertain a new effort by appellants, similar to the earlier one, simply to secure a declaration of rights in an escrowed fund in which the United States is potentially interested.[92] But at least if the fund should be paid over to the United States, jurisdiction would then accrue to decide whether appellants are entitled to its return,[93] and the District Court's judgment should indulge appellants that option also.[94] We understand that the United States does not contest jurisdiction in the Court of Claims to

entertain a suit to recover the compensation exacted if the United States does not have title.[95] Otherwise we would consider whether the interests of justice would not require us to remand to the District Court to consider the claim that the United States does not have title rather than remit the parties to a perhaps nonexistent remedy.[96]

We affirm the judgment appealed from, but without prejudice to an independent action by appellants for relief therefrom. We remand the case to the District Court for a modification of its judgment making plain that it is without prejudice to any future action in that court or in the Court of Claims seeking a return of the $196,200 fund on the ground that the United States lacked title to the alley in question at the time of its closing. We modify our previous judgment slightly to accord this disposition, and deny the petition for rehearing.[97]

*So ordered.*

---

Monies Deposited in United States Dist. Ct., 187 F.2d 131, 135 (3d Cir. 1951); Calvin-Humphrey Corp. v. United States, supra note 7; Nehf v. United States, 302 F.Supp. 356, 359 (N.D.Ill.1969).

**90.** See note 94 *infra.*

**91.** See 28 U.S.C. § 1491 (1970).

**92.** See *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 951–952, 47 L.Ed.2d 114, 118–119 (1976); *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

**93.** *Calvin-Humphrey Corp. v. United States, supra* note 7. See also cases cited *supra* note 89.

**94.** In the understanding, somehow derived, that after rendition of the District Court's judgment the escrowed monies had been paid over to the United States or soon would be, our original judgment provided for a remand with instruction to the District Court to modify its judgment to avoid possible prejudice to an independent action in the Court of Claims. Understanding as we do now that the monies remain in escrow, we extend the protection also to any such action that might be brought in the District Court.

**95.** Defendant's Reply Brief in *Washington Medical Center, Inc. v. United States*, No. 35,-972 (Ct.Cl.), at 2.

**96.** "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106 (1970).

**97.** See note 94 *supra.* Should appellants bring such an action in the District Court, it should first be determined whether the suit is jurisdictionally and procedurally appropriate. If so, the court should next ascertain whether appellants' post-judgment informational discovery satisfies the threshold requirements applicable to independent actions predicated on newly-discovered evidence. See text *supra* at note 81. If each of these questions is answered in the affirmative, the court should then reexamine its judgment in the light of the new evidence, and grant or deny relief as the occasion may warrant. Of course, the court is amply empowered to take any and all steps necessary to insure that justice is fully done, and it goes without saying that nothing in this opinion is to be taken as an indication of a view as to how the litigation should eventuate.