846 F.2d 482
 11 Fed.R.Serv.3d 161
 Harold HARRIS, Continental Casualty Company, and National
Fire Insurance Company of Hartford, Individually and as
Representatives of All Holders of Union Electric Co., First
Mortgage Bonds, 10 1/2%, Series Due 2005, As of April 11,
1978, Appellants,
v.
UNION ELECTRIC COMPANY, Appellee.
 Nos. 87-1966, 87-2044.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 17, 1988.
Decided May 9, 1988.
Rehearing Denied June 2, 1988.
 
 David L. Campbell, St. Louis, Mo., for appellants.
 Francis X. Duda, St. Louis, Mo., for appellee.
 Before FAGG and BEAM, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 Plaintiffs appeal from an order of the district court granting Union Electric Company's (UE) Rule 60(b) motion for $300,000 credit against the $2,716,240 judgment entered against Union in this securities fraud case. On appeal plaintiffs argue that the district court lacked jurisdiction to grant UE's motion and, in the alternative, that provided jurisdiction exists, the district court abused its discretion when it granted the motion. Union cross-appeals the district court's order pertaining to the disposition of unaccounted-for judgment funds in the amount of approximately $181,000. We affirm in part and reverse in part.
 
 I. BACKGROUND
 
 2
 In March 1975, UE issued $70,000,000 of its First Mortgage Bonds, 10 1/2% Series due March 1, 2005. Three years later, on April 11, 1978, UE publicly announced its plan to call $50,000,000 of the bonds. This announcement prompted almost immediate litigation. On May 9, 1978, plaintiffs individually and as class representatives filed suit in Missouri state court naming as defendants Union Electric, its mortgage trustee, and the managing underwriters who marketed the Series 2005 Bonds. In response to the lawsuit UE terminated its plan to call the bonds.
 
 
 3
 While the state court action was proceeding, plaintiffs filed a class action lawsuit in the United States District Court for the Eastern District of Missouri against UE, its trustee, and the underwriters alleging violations of section 10(b) of the Securities Exchange Act, 15 U.S.C. Sec. 78j(b) (1982), and Rule 10 b-5 of the Securities Exchange Commission, 17 C.F.R. Sec. 240.10b-5 (1985). Plaintiffs contended that the prospectus for the bonds misrepresented and omitted material facts regarding UE's right to call the bonds.
 
 
 4
 The federal suit was bifurcated and set for trial on October 31, 1983. Three days before the proposed trial date plaintiffs reached a settlement agreement with the underwriters on the state court and federal court claims. In settlement of the state court claims the three individually named plaintiffs were paid $100,000. The federal claim against the underwriters was settled for $200,000 payable to all plaintiffs, individuals and class members.
 
 
 5
 On October 9, 1984, the liability phase of the federal court trial began. The jury found for plaintiffs and after a trial on the issue of damages returned a verdict in favor of plaintiffs in the amount of $2,716,240. UE appealed and this court affirmed. Harris v. Union Elec. Co., 787 F.2d 355 (8th Cir.1986). After the United States Supreme Court denied UE's petition for writ of certiorari, --- U.S. ----, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986), UE paid into the court registry the sum of $3,293,973.13, representing the judgment with interest and costs. Simultaneously, UE filed a motion with the district court seeking a $300,000 credit against the judgment, arguing that the settlement with the underwriters constitutes a partial satisfaction of the judgment. The district court agreed and granted the motion.
 
 
 6
 Another issue before the district court was the disposition of approximately $181,000, representing checks which were issued to class members from the judgment fund, but which either were returned or remain uncashed. The district court directed that the money be paid over to UE for and on behalf of the bondholders who had not yet claimed their shares. The court further ordered that UE publish notice of the unclaimed funds in its annual shareholders reports for the years 1987 through 1991 and that any money remaining at the end of the five year period escheat to the United States. After UE filed its cross-appeal, it filed a motion with the district court requesting that the notice requirement be modified to require five annual advertisements in the Wall Street Journal. The district court stayed the notice provisions, but denied without prejudice the motion for modification.
 
 II. DISCUSSION
 
 7
 Plaintiffs' arguments on appeal fall into two general categories: First, plaintiffs argue that the district court had no jurisdiction to entertain UE's motion for credit. Second, plaintiffs argue that assuming jurisdiction exists, the district court abused its discretion in granting the motion. We will discuss each argument separately, followed by the issues presented in the cross-appeal.
 
 A. Jurisdiction
 
 8
 Plaintiffs argue that once the judgment of the district court was affirmed by this court and certiorari was denied by the Supreme Court, the district court had no jurisdiction to alter or amend it. While we agree with the substance of plaintiffs' argument, we question its applicability to this case. The district court did not reduce the amount of the judgment, but merely recognized that the judgment had been partially satisfied by the settlement with the underwriters. We believe that under these facts the district court had jurisdiction to act as it did. See Standard Oil Co. v. United States, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976) (per curiam).
 
 
 9
 Plaintiffs also argue that the district court lacked jurisdiction because the motion was untimely. UE filed its motion on October 8, 1986, nearly twenty-three months after the district court entered judgment in favor of plaintiffs.
 
 
 10
 Federal Rule of Civil Procedure 60(b) provides, in relevant part:
 
 
 11
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: * * * (5) the judgment has been satisfied, released, or discharged * * * (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time * * * *
 
 
 12
 What constitutes a "reasonable time" depends largely on the facts of each case under consideration. See In re Emergency Beacon Corp., 666 F.2d 754, 760 (2d Cir.1981) (twenty-six month delay not unreasonable). We believe that the district court correctly determined that UE's motion was timely under the circumstances. From shortly after entry of judgment until the Supreme Court denied UE's petition for a writ of certiorari, the judgment was subject to modification on appeal. Although a better approach may have been for UE to file its motion before appealing the entire judgment, we can not say that the district court abused its discretion in entertaining UE's motion. Union did not act unreasonably in waiting until all avenues of appeal had been exhausted before filing its motion.
 
 B. Merits
 
 13
 Plaintiffs assert several reasons why the district court abused its discretion in granting UE's motion for a $300,000 credit.
 
 
 14
 First, plaintiffs argue that granting a credit in this case violated the clear and overriding federal policy in favor of settling complex cases. Contribution impedes settlement, plaintiffs argue. Also, UE should be denied credit because its conduct was egregious. Second, plaintiffs argue that contribution was inappropriate because the claims asserted against UE were different than those against the underwriters. The underwriters and UE were not joint-tortfeasors. Finally, plaintiffs argue that $100,000 of the $300,000 paid by the underwriters was not received by the plaintiff class, but rather was paid to the three named plaintiffs individually. The judgment in favor of the class should not be reduced by this $100,000.
 
 
 15
 Our analysis of these arguments is guided by the principle that an injured party is entitled to only one satisfaction for each injury. Whether there is one tortfeasor or ten, the injured party may only recover once. See Kassman v. American University, 546 F.2d 1029, 1033-34 (D.C.Cir.1976). The egregiousness of the injury does not alter this principle, nor does the complexity of the case. See, e.g., Rolf v. Blyth, Eastman Dillon & Co., Inc., 637 F.2d 77 (2nd Cir.1980) and MacKethan v. Burrus, Cootes, & Burrus, 545 F.2d 1388 (4th Cir.1976), cert. denied, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977) (securities cases in which non-settling defendants were granted credit for amount of settlement paid by other defendants). As long as plaintiffs have only suffered a single wrong they must be limited to a single recovery.
 
 
 16
 We believe that the actions of UE and the underwriters were joint and concurrent. Plaintiffs' amended complaint sought damages against UE and the underwriters "jointly and severally." Plaintiffs alleged that the underwriters took part in the nondisclosure of the redemption right, that the underwriters intended for the prospectus to mislead bond purchasers, and that UE and the underwriters used the mails in their scheme to defraud. Paragraph nineteen of the complaint sets forth, in nine separate subparagraphs, the joint misconduct of UE and the underwriters. Further, the single injury resulting from the scheme was the diminution in value of the bonds. In the face of their own detailed allegations of joint and several liability, plaintiffs now argue that this case involves independent actions on the part of UE and the underwriters. We are not persuaded, however, because the federal claims against UE and the underwriters are virtually identical. The district court correctly credited UE with the $200,000 paid by the underwriters in settlement of the federal claims.
 
 
 17
 The state court settlement is somewhat different, however, because the underwriters paid $100,000 to the three named plaintiffs, rather than to the class of plaintiffs. The judgment against which credit was given was entered in favor of the class of plaintiffs. UE argues that the entire $300,000 credit was nevertheless appropriate because the entire amount was paid in consideration of settlement of both the state and federal claims and because the $100,000 was used to pay the class's attorney. We disagree. Contrary to UE's contentions, the $100,000 was specifically paid in satisfaction of the state court claims rather than both the state and federal claims. Further, the ultimate use to which the money was put is not controlling here. The named plaintiffs' use of this money to pay their attorney did not sufficiently benefit every class member to justify reducing the class judgment by $100,000. Since the entire class did not receive the $100,000, their judgment should not be reduced by that amount.
 
 C. Cross-appeal
 
 18
 The final issue on appeal concerns the disposition of approximately $181,000 in judgment fund money owed to class members who have not been found. We affirm the order of the district court to the extent that it provides that any money unclaimed after five years escheats to the United States. See 28 U.S.C. Sec. 2042. We also recognize that the district court retains jurisdiction over matters relating to the judgment fund and may, in its discretion, reconsider UE's motion for modification as it pertains to the notice requirement.
 
 III. CONCLUSION
 
 19
 Appellate review in this case did not deprive the district court of jurisdiction to entertain UE's timely Rule 60(b) motion for credit against the judgment. In order to prevent a double recovery by the plaintiff class, the district court correctly credited UE with the $200,000 paid to the class by the underwriters. However, since the class did not receive any of the $100,000 settlement, that amount was incorrectly credited. Finally, the district court is free to reconsider the notice provision of its order pertaining to the unclaimed portions of the judgment fund.