889 F.2d 764
 15 Fed.R.Serv.3d 541
 The FEDERAL LAND BANK OF ST. LOUIS, Appellee,
v.
CUPPLES BROTHERS, a Partnership; Horace E. Cupples, Jr.;
Jacob W. Cupples, a/k/a J.W. Cupples and Thomas E. Cupples,
individually and as members of the partnership; Gracie M.
Cupples; Gloria J. Cupples; Dorothy A. Cupples Gush and
Milton J. Gush, her husband; Stephen D. Cupples and Sandra
Cupples, his wife; Gwen C. Cupples Pospisil and Mark G.
Pospisil, her husband; Linda D. Cupples; Cynthia J.
Cupples and Larry C. Cupples; Horace E. Cupples III and
Pamela Cupples, his wife; Forrest City Production Credit
Association, a federally chartered corporation; The United
States of America, acting through the Farmers Home
Administration, U.S. Department of Agriculture; Richard T.
Doughtie III, Trustee in Bankruptcy for Malcolm Gravette,
d/b/a Mac's Flying Service; The Commissioner of Revenue for
State of Arkansas; Ferry Morse Seed Co.; and Simboro
Farms, a partnership, Appellants.
 No. 89-1491.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1989.
Decided Nov. 8, 1989.
Rehearing and Rehearing En Banc Denied Jan. 5, 1990.
 
 Roy C. Lewellen, Marianna, Ark., for appellants.
 Bill Waddell, Little Rock, Ark., for appellee.
 Before ARNOLD and MAGILL, Circuit Judges, and ROSS, Senior Circuit Judge.
 MAGILL, Circuit Judge.
 
 
 1
 The Cupples Brothers (Cupples), an Arkansas farming partnership, appeals from the district court's[1] order denying its motion to restrain the sale of farmland under a foreclosure judgment entered in favor of the Federal Land Bank of St. Louis (FLB). The motion alleged that injunctive relief was needed to protect Cupples' rights under the Agricultural Credit Act of 1987 (the Act).[2] The district court denied the motion, holding that (1) the Act is inapplicable to a loan that merged into a foreclosure judgment prior to the Act's effective date, and (2) the motion was untimely under Fed.R.Civ.P. 60(b). We affirm.
 
 I.
 
 2
 Cupples executed promissory notes in favor of FLB in 1974. Two mortgages secured the notes. After Cupples defaulted, FLB brought a foreclosure action on February 4, 1986. The case was set for trial on two different occasions. The district court continued the first trial date to permit further motions to be filed. On the morning of the second scheduled trial, Cupples filed another motion, in which it took issue with previous orders of the district court. Although distressed by this late filing, the district court again continued the trial. The district court entered summary judgment for FLB on October 21, 1987, and a judgment and decree of foreclosure on December 29, 1987. The Act became effective on January 6, 1988. On January 28, 1988, Cupples filed a notice of appeal from the judgment, and a motion to stay the scheduled foreclosure sale was granted by the district court on April 25, 1988. This court affirmed the foreclosure judgment on January 3, 1989. Federal Land Bank of St. Louis v. Cupples Bros., 871 F.2d 1092 (8th Cir.1989) (per curiam). On February 6, 1989, FLB filed a second notice of marshal's sale, and a foreclosure sale was scheduled for March 28, 1989.
 
 
 3
 On March 16, 1989, Cupples filed a motion in the district court entitled "Motion for Temporary Restraining Order for Failure to Follow Statutory Requirements." The motion sought injunctive relief to prevent the foreclosure sale on the ground that Cupples has restructuring rights under the Act because its indebtedness to FLB is a "distressed loan." The district court denied the motion, holding that the Act is inapplicable because the loan merged into the foreclosure judgment under Arkansas law and therefore ceased to exist prior to the Act's effective date. The district court further held that Cupples' motion was untimely under Rule 60(b) because it was not made within a reasonable time. The appeal to this court followed.[3]
 
 II.
 
 4
 The district court found that Rule 60(b) was the only conceivable jurisdictional basis for Cupples' motion.[4] On appeal, Cupples states that its motion was made pursuant to subdivisions (b)(5)-(6) of Rule 60. As with all Rule 60(b) motions, motions under either of these subdivisions must be made within a reasonable time after entry of the judgment from which relief is sought, but they are not subject to the additional one-year time limit placed on motions under subdivisions (b)(1)-(3).
 
 
 5
 The district court included the time during which Cupples' appeal from the foreclosure judgment was pending in calculating how long the motion was delayed. Cupples argues that this time cannot be counted against it because the district court had no jurisdiction to entertain a Rule 60(b) motion while the appeal was pending. This is clearly incorrect.
 
 
 6
 [I]n such a situation the district court has jurisdiction to consider the motion and if it finds the motion to be without merit to enter an order denying the motion, from which order an appeal may be taken.... If, on the other hand, the district court decides that the motion should be granted, counsel for the movant should request the court of appeals to remand the case so that a proper order can be entered.
 
 
 7
 Pioneer Ins. Co. v. Gelt, 558 F.2d 1303, 1312 (8th Cir.1977). It is well established that the pendency of an appeal does not toll the one-year maximum period for filing motions under Rule 60(b)(1)-(3). See, e.g., Hancock Indus. v. Schaeffer, 811 F.2d 225, 239 (3d Cir.1987); Egger v. Phillips, 710 F.2d 292, 329 (7th Cir.), cert. denied, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983); Carr v. District of Columbia, 543 F.2d 917, 925-26 (D.C.Cir.1976); Transit Casualty Co. v. Security Trust Co., 441 F.2d 788, 791 (5th Cir.), cert. denied, 404 U.S. 883, 92 S.Ct. 211, 30 L.Ed.2d 164 (1971); Corn v. Guam Coral Co., 318 F.2d 622, 629 n. 13 (9th Cir.1963). The reason behind this principle is that such motions "can be made even though an appeal has been taken and is pending." Transit Casualty, 441 F.2d at 791. This reasoning applies with equal force to motions under Rule 60(b)(5)-(6), and nothing in the case law suggests otherwise. See Harris v. Union Elec. Co., 846 F.2d 482, 484-85 (8th Cir.1988) (including time during which appeal pending in calculating delay in filing of Rule 60(b)(5)-(6) motion). Accordingly, the question in this case is whether the year and eleven weeks from entry of judgment to the filing of the Cupples' motion was a reasonable time for purposes of Rule 60(b).
 
 
 8
 What constitutes a reasonable time under Rule 60(b) depends on the particular facts of the case in question. Harris, 846 F.2d at 484. Because it involves an assessment of all the attendant facts and circumstances, the district court's determination as to whether a motion was made within a reasonable time is reviewed only for abuse of discretion. Id. at 485; 7 J. Moore & J. Lucas, Moore's Federal Practice p 60.19, 148-49 (2d ed. 1987). In Harris, we declined to find that the district court abused its discretion in entertaining a Rule 60(b)(5)-(6) motion made after exhaustion of the appeals process and almost twenty-three months after judgment was entered.[5] Harris, however, differs from the instant case in one critical respect. There was no indication in Harris that the motion was filed for the purpose of delaying implementation of the underlying judgment. The motion sought credit for partial satisfaction of the judgment and was made "[s]imultaneously" with full payment of the judgment after the close of the appeals process. Harris, 846 F.2d at 484. By contrast, Cupples waited an additional ten weeks after the foreclosure judgment was affirmed and filed its motion only twelve days before the scheduled sale date. Cupples has not provided an adequate explanation for this delay. Moreover, other than its incorrect view of the district court's jurisdiction, Cupples has not explained its failure to bring the motion in the twelve months between the Act's effective date, when the basis for the motion arose, and affirmance of the foreclosure judgment. In finding the motion untimely, the district court concluded that Cupples "continues to file motions for the purpose of delay." The record supports this appraisal of the situation. Under these circumstances, we are not prepared to say that the district court abused its discretion in finding Cupples' Rule 60(b) motion was not made within a reasonable time.
 
 III.
 
 9
 Even if Cupples' motion were deemed timely, it provides no basis for disturbing the foreclosure judgment or preventing the sale. An appeal from an order denying a Rule 60(b) motion raises for review only the propriety of the denial, not the merits of the underlying judgment. See, e.g., Mohammed v. Sullivan, 866 F.2d 258, 260 (8th Cir.1989). The denial here was proper. Under Arkansas law, the promissory notes and mortgages in favor of FLB merged into the foreclosure judgment and ceased to exist. See Steelman v. Planters Prod. Credit Ass'n, 285 Ark. 217, 685 S.W.2d 800 (1985). Because only the judgment and no loan existed as of the Act's effective date, the district court was correct in holding that Cupples has no loan restructuring rights under the Act.
 
 
 10
 The district court relied on Griffin v. Federal Land Bank of Wichita, 708 F.Supp. 313 (D.Kan.1989), in reaching this conclusion. In Griffin, a foreclosure sale took place after the Act's effective date on a judgment entered before the effective date. The court determined that "because of the merger doctrine in Kansas, once the judgment of foreclosure was entered there was no longer a distressed loan under the terms of [12 U.S.C.] Sec. 2202a(b)(3)."[6] Id. at 317. After a lengthy analysis of the Act's provisions and legislative history, the court held that the borrowers had no restructuring rights which were denied by the foreclosure sale. Id. at 319.
 
 
 11
 We adopt Griffin's thorough and well-reasoned analysis. The Act entitles borrowers to restructure "distressed loans" if the cost of restructuring is less than or equal to the potential cost of foreclosure. 12 U.S.C. Sec. 2202a(e). As used in the Act, the term "loan" refers to "the contractual credit arrangement between the borrower and lender," not to "a general indebtedness embodied in a judgment." Griffin, 708 F.Supp. at 317. The Act's provisions and legislative history do not demonstrate a congressional intent to impose a moratorium on all foreclosure sales where the underlying judgment was entered prior to the Act's effective date. See id. at 318-19. Cupples relies on Harper v. Federal Land Bank of Spokane, 692 F.Supp. 1244, 1249 (D.Or.1988), rev'd on other grounds, 878 F.2d 1172 (9th Cir.1989), which found that "Congress intended a complete moratorium on all foreclosure proceedings."[7] The perfunctory and incomplete analysis employed in that case is unpersuasive.[8] We conclude that the Act does not operate to prohibit a foreclosure sale under the circumstances of this case.
 
 IV.
 
 12
 In sum, the district court did not abuse its discretion in finding Cupples' Rule 60(b) motion untimely. Even if the motion were considered timely, the district court properly denied it on the ground that Cupples has no restructuring rights under the Agricultural Credit Act of 1987. Accordingly, the order of the district court is affirmed.
 
 
 13
 ARNOLD, Circuit Judge, dissenting.
 
 
 14
 I respectfully dissent. I cannot agree with either the procedural or the substantive reason given by the Court for its holding.
 
 
 15
 The Court first says that the Cupples Brothers' Rule 60(b) motion was untimely. The elapsed time is computed from the entry of the judgment of foreclosure on December 29, 1987. Between that date and the filing of the motion on March 16, 1989, some 14 1/2 months passed. The Court holds that this is an unreasonable length of time.
 
 
 16
 This analysis overlooks two important facts. First, an appeal was pending for almost 12 of the 14 1/2 months in question. It is true, as the Court says, that a Rule 60(b) motion can be filed during the pendency of an appeal. But the fact that an appeal is pending "may be considered in determining whether a motion was made in a reasonable time." 11 Wright & Miller, Federal Practice & Procedure Sec. 2866, at p. 233 (1975 & Supp.1989) (footnote omitted). This is so for good reason. Although a Rule 60(b) motion may be made and considered while an appeal is pending, and a district court may deny it without action by the Court of Appeals, such a motion may not be granted unless the Court of Appeals remands the case to allow the district court to act. Busy lawyers, especially those who are not in large firms and who have more than one client, should be pardoned if they decide to concentrate on their appeal (which, if successful, will make a request for 60(b) relief entirely unnecessary). This Court routinely declines to remand for consideration of such motions, anyway, usually preferring to go ahead and decide the appeal, following which the post-judgment motion can still be made in the district court, if it has not become moot.
 
 
 17
 In addition, an important legal development occurred while the appeal was pending, a development that would significantly affect any lawyer's decision whether to use the new Agricultural Credit Act in an attempt to get relief from the judgment of foreclosure. On September 14, 1988, the Farm Credit Administration issued its final regulations to carry the new law into effect. A prefatory statement accompanying these regulations, 53 Fed.Reg. 35428 (Sept. 14, 1988), made clear the view of the Administration that the restructuring rights created by the new law would apply to any foreclosure proceeding that was not complete on January 6, 1988, the day the new Act became law. Not until this statement had been issued could counsel for Cupples (or anyone else) have been aware that the agency charged with execution of the new law was going to construe it to apply to foreclosure proceedings that had already been commenced on the date of enactment. This was an important piece of information, and I think Cupples should be given a reasonable time after receiving it to decide what to do with it. Here, the Rule 60(b) motion was filed within six months of the agency announcement, and that strikes me as not unreasonable.
 
 
 18
 I also disagree with the Court on the merits. The question presented is simply stated: the statute requires lenders, under certain circumstances, to restructure loans. 12 U.S.C. Sec. 2202a(e)(1). Obviously Cupples Brothers at one time had a "loan" from the Federal Land Bank. The loan was reduced to judgment on December 29, 1988, eight days before enactment of the new law. Did the loan, by virtue of being reduced to judgment, immediately cease to be a loan in the sense that Congress used that word?
 
 
 19
 I think the answer is no. In deciding otherwise, the Court relies on the familiar common-law doctrine of merger. When the foreclosure judgment was entered, it says, "the promissory notes and mortgages in favor of FLB merged into the foreclosure judgment and ceased to exist." Ante, at 767. I doubt that the point is valid, even considered on its own terms, because the judgment had not yet become final when the new Act was signed. It was still subject to appeal, and in fact, as we have seen, it was appealed. If there was a merger at all, it was an inchoate or unperfected one, and should not be taken to have destroyed the "loan" for all purposes and all time. But there is a deeper flaw in the Court's reliance on the merger doctrine. "Merger" is simply a way of saying that a debt that has been reduced to judgment is treated differently, for some purposes, from a debt that has not been reduced to judgment. After judgment, for example, no new action may be brought on the debt. Such an action is barred by the merger aspect of the doctrine of res judicata. Moreover, actions on judgments are typically subject to longer statutes of limitations than actions on debts; judgments may be periodically revived, thus remaining enforceable much longer than the underlying debt would have; and so forth. Steelman v. Planters Prod. Credit Ass'n, 285 Ark. 217, 685 S.W.2d 800 (1985), which the Court cites, is nothing but a routine example of one of these state-law consequences of reducing a debt to judgment. It applies the merger aspect of the doctrine of res judicata to bar an action in one county on a debt that had already been reduced to judgment in another county.
 
 
 20
 It makes no sense to transplant this merger concept into the present case and apply it mechanically to quite a different question, a question not of common-law doctrines but of statutory interpretation. With all respect, I submit that the Court's use of the merger doctrine to interpret an Act of Congress is based on the fallacy that a word must mean the same thing every time it is used. If a debt or a loan reduced to judgment is no longer a debt or a loan for res judicata purposes, the Court seems to say, then it can't be a loan for purposes of the Agricultural Credit Act of 1987. It seems to me extremely unlikely that Congress, which passed the law in an effort to help farmers in trouble, intended its purpose to be confined by a technical state-law doctrine conceived and applied for quite different purposes. I believe that both borrowers and lenders, in everyday business dealings and speech, would continue to think of the Cupples Brothers as having a "distressed loan" from the Federal Land Bank, notwithstanding the fact that the Bank had secured a judgment. This common-sense reading of the Act would certainly help more distressed borrowers, thus more fully carrying out the general purpose of the Legislature.
 
 
 21
 Of course it is true that finality must occur at some point. A farmer whose land had already been taken and sold, for example, might continue to think of himself as having a distressed loan, but it would hardly be practical to give him restructuring rights. A line must be drawn at some point. But here the policy statement of the Farm Credit Administration, referred to once already, becomes important again. According to that policy statement, the Act applies in this case. The Administration stated:
 
 
 22
 While the issue is not free from doubt, upon a review of the statutory language, the FCA Board has concluded that as long as the foreclosure proceeding as defined in [12 U.S.C. Sec. 2202a(a)(4) ] ... was not complete as of January 6, 1988, restructuring rights are applicable if otherwise appropriate.
 
 
 23
 53 Fed.Reg. 35428. Here, foreclosure proceedings were of course not yet complete on January 6, 1988. They are not complete even now. Courts must defer to an interpretation of a statute by the agency charged with its execution, so long as the interpretation is reasonable, as this one clearly is. I think we should follow this rule here.
 
 
 24
 I conclude with one further observation. The Court holds today only that Cupples has no right to restructuring. Other rights created by the new Act may be available. See Brief for Appellee Federal Land Bank 10 ("FLB intends to extend to ... Cupples any rights [of first refusal] that [it] may have pursuant to [12 U.S.C. Sec. 2219a]."). In fact, if I understood correctly what counsel for the Bank said at the oral argument, the Bank is voluntarily extending rights of first refusal and repurchase even in cases where the loan had already been reduced to judgment on January 6, 1988.
 
 
 25
 For these reasons, I would reverse the judgment of the District Court.
 
 
 
 [1]
 The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 12 U.S.C. Secs. 2001 to 2279aa-14 (1988)
 
 
 [3]
 We granted Cupples' motion for a stay of the foreclosure sale pending appeal and Cupples posted the required bond. Although Cupples' motion was styled a "Motion for Temporary Restraining Order," we concluded that we have jurisdiction over this appeal because (1) the motion in reality was a request for a preliminary injunction, and (2) the district court's denial of the motion was the functional equivalent of a final judgment. Federal Land Bank of St. Louis v. Cupples Bros., no. 89-1491 (8th Cir. May 24, 1989)
 
 
 [4]
 Rule 60(b) provides in relevant part as follows:
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.
 
 
 [5]
 We noted, though, that "a better approach" may have been for the movant to file the motion prior to appealing the judgment. Harris, 846 F.2d at 484
 
 
 [6]
 Section 2202a(b)(3) reads as follows:
 Limitation on Foreclosure.--No qualified lender may foreclose or continue any foreclosure proceeding with respect to any distressed loan before the lender has completed any pending consideration of the loan for restructuring under this section.
 
 
 [7]
 The Ninth Circuit reversed the district court's decision in Harper on the ground that the Act does not contain an implied private right of action to enforce its provisions. Harper v. Federal Land Bank of Spokane, 878 F.2d 1172, 1174-77 (9th Cir.1989). It did not reach the question of the Act's applicability where a foreclosure judgment has been entered before its effective date. Id. at 1174. An Eighth Circuit panel recently rejected the Ninth Circuit's decision in Harper, holding instead that "farmer-borrowers have a private right of action to enforce the borrowers' rights provisions of the Act." Zajac v. Federal Land Bank of St. Paul, 887 F.2d 844, 856 (8th Cir.1989) (over dissent by Judge Fagg who would follow Harper ). Zajac is not otherwise relevant here because it does not address the Act's applicability under the circumstances of this case. See id. at 846 (state court issued decision in favor of bank three weeks before Act's effective date, but bank "delayed entry of its state court foreclosure judgment to afford the Zajacs an opportunity to restructure their loan" under the Act; foreclosure judgment then entered in May 1988 after bank denied application for restructuring)
 
 
 [8]
 Cupples also cites In re Dilsaver, 86 B.R. 1010 (Bankr.D.Neb.1988), aff'd, 101 B.R. 604 (D.Neb.1989). Dilsaver simply held that "the protections afforded by the Act are ... available to borrowers who filed bankruptcy petitions prior to the effective date of the Act." Id. at 1012. The case did not involve a foreclosure judgment entered prior to the Act's effective date and therefore is of little relevance here